# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| BRUCE K. SIDDLE, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:09-cv-00175 |
| v. | ) | Judge Aleta A. Trauger |
| | ) | |
| DOCTOR R. CRANTS, JR., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| BRUCE K. SIDDLE, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:09-cv-01137 |
| v. | ) | Judge Aleta A. Trauger |
| | ) | |
| CONNECTGOV, INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the court in two related cases are numerous motions concerning the assessment of attorney's fees and expenses against the plaintiffs under Fed. R. Civ. P. 54 (collectively, "Rule 54 Motions") and potential sanctions against their former attorneys under 28 U.S.C. § 1927 (collectively, "Motions for § 1927 Sanctions"). For the reasons stated herein, the Rule 54 Motions will be granted, the Motions for § 1927 Sanctions will be granted in part and denied in part, and the plaintiffs' request for a hearing in both cases will be denied. The plaintiffs will be jointly and severally liable to the defendants for all allowable attorney's fees and expenses in both cases. The court will sanction attorney Bruce Carr in both cases, the court will sanction attorney Rex Carr in the earlier-filed case only, and the court will not sanction attorney Mary

1

Parker in either case.

Also, acting *sua sponte*, the court will dismiss the Third-Party Complaints filed by the plaintiffs against Bruce Carr and Rex Carr without prejudice for failure to seek leave of court under Fed. R. Civ. P. 14, the court will dismiss the Counterclaim filed by defendant Crants III as moot, and the court will deny the plaintiffs' Motion to Dismiss Crants III's Counterclaim as moot.

## PROCEDURAL HISTORY

This opinion concerns pending motions in two related cases: (1) *Bruce K. Siddle, et al. v. Doctor Crants, Jr, et al.*, No. 3:09-cv-0175 (filed September 30, 2008) ("*Siddle I*"); and (2) *Bruce K. Siddle, et al. v. Connectgov, Inc.*, No. 3:09-cv-01137 (filed May 19, 2009) ("*Siddle II*").[1]  Both cases were filed by Bruce K. Siddle and his wife Sandra K. Siddle, individually and as trustees of the Bruce K. Siddle and Sandra K. Siddle Trusts, and by PPCT Management Systems, Inc. (collectively, "the Siddles").

## I.   Background Concerning Pre-Litigation Events

In two previous opinions, the court has detailed the factual background of *Siddle I* and *Siddle II*.  *See Siddle v. Crants*, No. 3:09-0175, 2010 WL 424906 (M.D. Tenn. Jan. 25, 2010) [*Siddle I* Docket No. 285] (opinion referred to hereinafter as "*Crants I*"); *Siddle v. Crants*, Nos. 3:09-0175, 3:09-1137, 2010 WL 2570145 (M.D. Tenn. June 22, 2010) [*Siddle I* Docket No. 336; *Siddle II* Docket No. 251] (opinion referred to hereinafter as "*Crants II*").[2]  Briefly, the cases

---

[1]Hereinafter, the court will refer to docket entries in *Siddle I* as "*Siddle I* Docket No. [X]" and in *Siddle II* as "*Siddle II* Docket No. [X]."

[2]*Siddle I* and *Siddle II* were not formally consolidated.  However, as explained herein, the claims in each case presented certain common factual and legal issues, and several defendants in *Siddle I* shared interests with the defendants in *Siddle II*.  For this reason, the parties at times

2

broadly concern a business partnership gone awry, in which the Siddles acquired business interests in the "Homeland Security Company" ("HSC"), a company that competed for post-9/11 government security contracts. The Siddles had invested in HSC with Doctor R. Crants, Jr. ("Crants") and his son Doctor R. Crants, III ("Crants III"), whom the Siddles alleged operated HSC in a manner that cheated the Siddles in favor of certain third-party companies in which Crants and Crants III had a controlling interest.

As explained in *Crants I* and *Crants II*, the Siddles initially retained a major law firm, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC ("Baker Donelson") to investigate the Siddles' claims of impropriety in 2005 and 2006. *See Crants I*, 2010 WL 424906, at *2-*3. After that investigation, the Siddles executed two broad binding releases ("Releases") that, in combination, released various entities, including Crants and Crants III, from any potential liability for the claimed wrongdoing. (*See Siddle I* Docket No. 152, Exs. 2 (April 6, 2006 Mutual Release and Settlement Agreement, ¶ 2) (hereinafter "April 6 Release") and 3 (October 3, 2006 Stock Purchase Agreement, at ¶ 13.10) (hereinafter, "SPA")); *Crants I*, 2010 WL 424906, at *10

─────────────

cross-docketed various filings, and, where appropriate, the court issued orders captioned under both cases. The court's January 25, 2010 opinion addressed motions for summary judgment filed by two defendants in *Siddle I* only. Based on the findings in that initial opinion, the remaining defendants in *Siddle I* and all of the defendants in *Siddle II* subsequently moved for summary judgment. In the interest of judicial economy, the court addressed these follow-on motions collectively in a single opinion issued on June 22, 2010, which was captioned in both cases. *See Crants II*, 2010 WL 424906, at *1. Similarly, here, the court addresses the pending motions in both cases in a single opinion in the interest of judicial economy.

For purposes of this Memorandum, the court will generally maintain a distinction between events and filings in *Siddle I* and *Siddle II*, where appropriate. However, for ease of reference, the court will refer to its January 25, 2010 Memorandum opinion (captioned in *Siddle I* only) as "*Crants I*" and to its June 22, 2010 Memorandum opinion (captioned in both cases) as "*Crants II*."

3

("Clearly, the unambiguous intent of both the April Agreement [April 6 Release] and the SPA was to permanently end the prospect of litigation between Siddle, Crants, HSC, and associated entities. Therefore, all claims for damages arising out of the alleged financial malfeasance at issue were within the contemplation of the parties at the time the releases were entered into.")

Furthermore, the April 6 Release contained a forum selection clause, which obligated the parties to litigate any challenges related to that agreement in Nashville, Tennessee. (*See* April 6 Release ¶ 3(a) ("Any action to enforce or interpret this agreement shall be brought solely in the appropriate courts for Nashville, Davidson County, Tennessee, to which the parties hereby submit to the exclusive jurisdiction and venue thereof.") The April 6 Release also specified that, "[i]n the event any action, suit, or other proceeding is instituted concerning or arising out of this Agreement, the prevailing party shall recover all of such party's costs and attorney's fees incurred in such action, suit, or other proceeding, including any and all appeals therefrom." (*Id.* ¶ 3(b).)

## II.  *Siddle I* **and** *Siddle II*

### A.  *Siddle I* **Filed in S.D. Ill.**

On September 30, 2008, notwithstanding the Releases, the Siddles filed *Siddle I* in the United States District Court for the Southern District of Illinois. As stated in the Amended Complaint (*see Siddle I* Docket No. 6, Am. Compl.), the Siddles alleged 19 combined counts against Crants, Crants III, attorney Linda Cooper ("Cooper") (an attorney for HSC and Crants) and George Crawford ("Crawford") (outside corporate counsel for HSC and/or Crants), accountant Roy W. Oaks ("Oaks") (outside accountant for HSC and Crants) and Lee Booth (an "associate" of HSC and Crants). The Siddles alleged, *inter alia*, racketeering claims under 18

4

U.S.C. § 1962 ("RICO"), violations of § 10(b) of the Securities and Exchange Act of 1934

("Exchange Act"), and copyright infringement, as well as state law claims for unfair and

deceptive business practices, breaches of fiduciary duty, tortious interference, unjust enrichment,

fraudulent misrepresentation, and conversion in connection with HSC's business operations. At

the time they filed *Siddle I* on September 30, 2008, the Siddles were represented by attorneys

Bruce Carr and Rex Carr of the Rex Carr Law Firm, located in East Saint Louis, Illinois.

The defendants collectively filed a host of motions to dismiss and/or transfer the case,

which, in relevant part, argued that the Releases either barred the claims or at least required the

parties to litigate the enforceability of the Releases in the Middle District of Tennessee.

Supported by an accompanying declaration from Bruce Siddle, the Siddles opposed these

motions, arguing, *inter alia*, that the Releases were unenforceable because they lacked

consideration and/or were the product of fraud and coercion. (*See, e.g., Siddle I* Docket No. 77,

at p. 7, and Exs. 1-2 (Declaration of Bruce Siddle).) On February 17, 2009, the Illinois court

found that, under binding Seventh Circuit precedent in *Am Patriot Ins. Agency v. Mut. Risk*

*Mgmt.*, 364 F.3d 884 (7th Cir. 2004), the forum selection clause in the April 6 Release was

enforceable, regardless of the Siddles' fraud allegations and other defenses to enforcement of the

contract. (*See Siddle I* Docket No. 94) (Murphy, J.) Judge Murphy therefore transferred the case

to this court without addressing its merits. (*Id.*)

B.     **Proceedings in *Siddle I* Upon Transfer**

Upon transfer, Mary Parker ("Parker"), a Nashville-based attorney, filed a notice of

5

appearance as local counsel for the Siddles.[3]  (*Siddle I* Docket No. 108.)  With the court's permission, Bruce Carr then appeared *pro hac vice* as lead counsel for the Siddles.  (*Siddle I* Docket No. 126.)  Although attorney Rex Carr had appeared as counsel for the Siddles when they filed *Siddle I* in Illinois, Rex Carr did not file an appearance as counsel of record for the Siddles after transfer.

On April 20, 2009, Crants and Crants III each moved to dismiss the *Siddle I* Complaint, arguing, *inter alia*, that the Releases barred the Siddles' claims.  (*Siddle I* Docket Nos. 150-51 (Crants) and 156-57 (Crants III).)  On May 4 and May 13, 2009, the Siddles filed Responses in opposition, in which they argued, *inter alia*, that the Releases were unenforceable because they (1) were unsupported by consideration and/or (2) were essentially the product of fraud or economic duress.  (*See Siddle I* Docket Nos. 165 and 168.)  The briefs contained inflammatory rhetoric and serious accusations of perjury against the defendants, stating, among other things, that Crants "simply lied to Judge Murphy about issuing real stock certificates to Bruce K. Siddle on April 6, 2006 . . . ," and that Crants had engaged in the "use of falsehoods for the purpose of manufacturing evidence to influence federal courts."  (*Siddle I* Docket No. 165 at pp. 16-17.)  The Siddles' briefing characterized the Releases as "fraudulent," "not worth the paper on which they were written," and as having "the same effect as a phony deed to the Brooklyn Bridge."  (*Id.* at p. 2.)  Among other things, the briefing also accused Crants of having "drafted new fraudulent [stock] certificates to deceive Siddle into signing the fraudulent releases . . . ."  (*Id.* at p. 3; *see also Siddle II* Docket No. 168 at p. 15 ("Crants, III [] created a 'Note' that did not exist to cover

_____

[3]The circumstances under which the Siddles retained Parker as local counsel are explained in a later section of this opinion.

6

up the fact that it did not exist and to advance the lie that it did exist.").)

**C.** *HSC* **Lawsuit and Transfer Under the April 6 Release**

While *Siddle I* was pending, Bruce Siddle and Sandra Siddle (represented by Bruce Carr) filed a lawsuit against HSC ("*Siddle, et al. v. Homeland Security Corp.*, No. 3:09-cv-00400 (S.D. Ill. removed Dec. 12, 2008)) ("*HSC*"). After removal from Illinois state court to the Southern District of Illinois, Judge Murphy transferred *HSC* to this court on May 4, 2009 pursuant to the terms of the April 6 Release. (*See HSC* Docket No. 36, Order.)[4]

**D.** *Siddle II* **Filed in S.D. Ill**.

On May 19, 2009, just two weeks after Judge Murphy had enforced the forum selection clause a second time in *HSC*, the Siddles filed *Siddle II* in the Southern District of Illinois.

The *Siddle II* Complaint asserted RICO and state law conspiracy claims against additional companies and individuals who allegedly had conspired with "non-party conspirators" Crants, Crants III, Cooper, and Crawford (*i.e.*, the defendants in *Siddle I* other than Mr. Booth) to damage HSC and/or the Siddles' business interests. (*See Siddle II* Docket No. 2, Compl.) The defendants in *Siddle II* included, among others, (1) Connectgov, Inc. ("Connectgov"), for whom Crants served as an officer or principal; (2) five companies for whom Crants III served as an officer or principal, and Michael Devlin, an individual officer of certain of those companies

_____

[4]In *Siddle I*, Bruce and Sandra Siddle had originally sued on behalf of HSC. (*See Siddle I* Docket No. 1, Compl.) However, they removed HSC as a plaintiff in the *Siddle I* Amended Complaint (*Siddle I* Docket No. 6), after which they filed the *HSC* lawsuit *against* HSC while still represented by Bruce Carr. (*See HSC* Docket No. 36, May 4, 2009 Order.) Judge Murphy disqualified Bruce Carr as counsel for Bruce and Sandra Siddle in *HSC* on the basis that *Siddle I* and *HSC* were "substantially related" cases. (*Id.*)

7

(collectively referred to herein as the "Pharos Defendants")[5]; (3) Lattimore, Black, Morgan & Cain, P.C. ("LBMC"), the accounting firm that employed Oaks; and (4) Gullett, Sanford, Robinson & Martin, PLLC ("GSRM"), the law firm that employed Crawford. Bruce Carr appeared as attorney of record for the Siddles. However, unlike *Siddle I*, Rex Carr did not appear as counsel for the Siddles in *Siddle II*.

### E. Ruling on *Siddle I* Motions to Dismiss; Transfer of *Siddle II*

On June 18, 2009, this court denied Crants and Crants III's motions to dismiss in *Siddle I*. *See Siddle v. Crants*, 650 F. Supp. 2d 773 (M.D. Tenn. 2009) [*Siddle I* Docket No. 180]. With respect to the validity of the Releases, which the Siddles had challenged based on claims of fraud, economic duress, and lack of consideration, the court found that discovery was required to determine whether there was factual support for these contract defenses. *Id.*

Meanwhile, in *Siddle II*, which remained pending before Judge Murphy, the defendants filed a host of motions to dismiss and/or transfer. Collectively, the defendants argued that the Southern District of Illinois lacked jurisdiction over them, that the forum selection clause compelled transfer of *Siddle II* to this court (if not outright dismissal), that venue was inappropriate even without regard to the forum selection clause, and/or that the case at least should be transferred to this court for coordination with *Siddle I*. Notwithstanding the fact that Judge Murphy had already enforced the forum selection clause in *Siddle I* and in *HSC*, the

---

[5]The Pharos Defendants include: DC Investment Partners, LLC; Four Corners Capital, LLC; Lynnview Partners, LLC d/b/a Pharos Homeland, LLC; Pharos Capital Partners, L.P.; Pharos Homeland Financial, LLC; and Michael W. Devlin. In certain post-judgment filings (*see, e.g.*, *Siddle II* Docket No. 312), the Pharos Defendants and Crants III have filed joint papers in which they refer to themselves collectively as the "Pharos Defendants." However, to keep the record clear, the court will refer to the Pharos Defendants and Crants III separately.

8

Siddles opposed the defendants' motions. (*See Siddle II* Docket No. 81.) The Siddles'

opposition brief contained hyperbolic and inflammatory rhetoric that, like earlier briefs in *Siddle

I*, essentially accused the defendants of perjury. (*See, e.g.*, *id.* at p. 1 ("Apparently, the

defendants believe that if you repeat a lie often enough someone will believe it. These

defendants know that the April 2006 forum selection clause, release, and certificates were

fabricated . . . .").)

The Siddles also moved to strike several of the defendants' supporting affidavits,

accusing the affiants of committing perjury. (*See Siddle II* Docket No. 93 ¶ 1 ("Obviously, the

affidavits are not based upon personal knowledge but perjury.").) The Siddles' accusations

prompted swift responses from several defendants, who accused the plaintiffs of making

"repeated vexatious filings in this and related cases." (*Siddle II* Docket No. 95 at p. 3

(Connectgov Response).) One defendant produced evidence from publicly available information

to rebut the Siddles' allegations of perjury, with respect to which that defendant demanded

sanctions pursuant to 28 U.S.C. § 1927. (*See Siddle II* Docket No. 94 at p. 3.) Undaunted, the

Siddles then doubled down on their accusations, reiterating that the "the Release was clearly

obtained by fraud" and that one defendant had made "obvious lies" in its submissions to the

court. (*Siddle II* Docket No. 96 at p. 4; *see also Siddle II* Docket No. 97 at p. 1 (stating that

"Crants did perjure himself").) Judge Murphy denied the motion to strike these defendants'

affidavits, finding that the disputed facts were not material for purposes of resolving any of the

pending motions. (*See Siddle II* Docket No. 101 at pp. 8-9.) Judge Murphy's order did not

address the request for § 1927 sanctions.

On November 30, 2009, Judge Murphy transferred *Siddle II* to this court, finding that, as

9

with *Siddle I* and *HSC*, the forum selection clause was enforceable and compelled transfer. (*See Siddle II* Docket No. 102.) On December 8, 2009, Mary Parker filed a notice of appearance as local counsel for the Siddles in *Siddle II*. (*Siddle II* Docket No. 113.) On December 15, 2009, the court granted Bruce Carr's motion to appear *pro hac vice* on behalf of the Siddles in *Siddle II*. (*Siddle II* Docket No. 133.) Rex Carr did not file an appearance on behalf of the Siddles in *Siddle II*.

## III.    <u>Judgment in *Siddle I* and *Siddle II*</u>

After engaging in a substantial volume of discovery, Crants and Crants III filed Motions for Summary Judgment in *Siddle I*, in which they argued that discovery had not borne out the Siddles' challenges to the validity and enforceability of the Releases. (*Siddle I* Docket Nos. 219 (Crants) and 224 (Crants III).) In opposition to these motions, the plaintiffs filed Responses in opposition (*Siddle I* Docket Nos. 256 and 257), supported by a so-styled "Statement of Additional Material Facts and Declaration of Bruce K. Siddle" (*Siddle I* Docket No. 254, Siddle Decl.) This declaration spanned 83 pages and attached 387 exhibits. (*Id.*) In response, Crants and Crants III filed a substantial volume of materials, including (1) Reply briefs (*Siddle I* Docket Nos. 268 and 270), (2) a declaration from Crants with attached evidentiary exhibits (*Siddle I* Docket No. 269), (3) a Reply to the Siddle Declaration as a "statement of facts" under Local Rule 56.01 (*Siddle I* Docket No. 271), and (4) a motion to strike the Siddle Declaration with a supporting Memorandum of Law (*Siddle I* Docket Nos. 272-73.)

In its January 25, 2010 *Crants I* opinion, the court agreed with Crants and Crants III that the Releases were valid and enforceable. *Crants I*, 2010 WL 424906, at *10-*12. In reaching its conclusion, the court noted that the Siddles and their attorneys had made representations –

10

including sworn representations by Bruce Siddle – that were unsupported by and/or entirely inconsistent with the evidentiary record. *See, e.g.*, *id.* at 6 n.3 and at 8 n.4. The court also observed that the Siddle Declaration "largely restated the Second Amended Complaint allegations . . . and only occasionally, and often vaguely, cites to documents in the record, [and] clearly runs afoul of the Local Rules." *Id.* at 2 n.1. Nevertheless, because the court found that the undisputed facts in the record compelled summary judgment in favor of Crants and Crants III, the court denied the motion to strike the Siddle Declaration as moot.

After issuing *Crants I*, the court held a status conference in *Siddle I* and *Siddle II*. On January 26, 2010, the court stayed *Siddle I* and *Siddle II* to allow the Siddles and the remaining defendants to consider their options in light of *Crants II*. At the time, the court contemplated that the parties could stipulate to the enforceability of the Releases – as the court had found in *Crants I* – and, if there were any reasonable dispute about *applicability* of the Releases to particular defendants, submit briefing only on that specific issue. The Siddles did not so stipulate. As a consequence, the remaining defendants in both cases filed a host of motions for summary judgment.

In *Siddle I*, the Siddles responded by asserting the same factual challenges (based on the same documents) that the court had already considered and rejected in *Crants I*. Again, instead of addressing the applicability of the Releases, which was the only pertinent issue presented, the Siddles re-asserted the arguments that the court had rejected in *Crants I*, including the thoroughly discredited arguments that (1) the Releases were "fake, phony, and sham[s]," *id.* at *5, (2) the existence of certain "fiduciary" relationships somehow precluded enforcement of the Releases, *id.* at *5 n.4, and (3) that some actionable conduct occurred after the time period covered by the

11

Releases, *id.* at n.6. Furthermore, the Siddles continued to cite to the same declaration of Bruce

Siddle that they had relied upon in the first round of summary judgment briefing. The Siddles

also suggested that the court should defer ruling because there had not been "sufficient time for

discovery," but the court found the request for additional discovery was procedurally improper

and, in any case, without merit. *Id.* The court found that the claims against the remaining *Siddle*

*I* defendants were barred by the Releases:

> In sum, rather than addressing the pertinent issue of whether any of these
> defendants is not covered by the release agreements, the plaintiffs have simply re-
> argued that the releases are not enforceable at all. The court has considered these
> exact arguments before and ruled upon them. The plaintiffs continue to employ
> bold argument and skewed facts that are simply not supported by the record, but
> they make no real attempt to engage the arguments of the defendants or even the
> reasoning in the court's previous Memorandum. The plaintiffs have failed to
> show that these defendants who, facially, fall within the scope of the release
> agreements are somehow excepted from its enforceability.

*Crants II*, 2010 WL 2570145, at *6.

In *Siddle II*, the defendants asserted substantially the same arguments about the

applicability of the Releases. In opposing these motions, the Siddles filed a substantial volume of

materials, including seven response briefs (*Siddle II* Docket Nos. 223-228) and several Notices of

Filing attaching hundreds of exhibits (*Siddle II* Docket Nos. 230-223 and 235; refiled at Docket

Nos. 238-242) that the court had already considered before issuing the *Crants I* opinion. The

Siddles' opposition briefs "entirely re-hashe[d] the arguments raised in the two rounds of

summary judgment briefing in *Siddle I*," *id.* at *7, and reiterated positions that the court in *Crants*

*I* had previously found were "entirely inconsistent" with the evidentiary record. *Id.* at *7; *see*

*also id.* at *7 ("The plaintiffs are simply re-arguing a settled point in this litigation.").)

Furthermore, the Siddles continued to utilize inflammatory rhetoric in their briefing papers in

*Siddle II*.  (*See, e.g.*, *Siddle II* Docket No. 223 at p. 5 ("Could Al Capone simply have had his victims sign releases so that everyone in his gang would escape civil liability for their crimes?").) None of these voluminous submissions adequately addressed the only pertinent issue: whether the Releases encompassed the *Siddle II* defendants.  As with the remaining *Siddle I* defendants, the court found that the Releases covered the *Siddle II* defendants and entitled them to summary judgment.

Thus, on June 22, 2010, the court entered summary judgment in favor of the remaining defendants in both cases.

### IV.   Appeal of *Siddle I* and *Siddle II* Judgments

On July 19, 2010, the Siddles filed a consolidated appeal in both cases.  Parties in both cases filed appellate briefs and participated in oral argument before the Sixth Circuit.  On January 5, 2012, the Sixth Circuit affirmed *Crants I* and *Crants II*, adopting this court's reasoning in both cases.  (*See Siddle I* Docket No. 383, Sixth Circuit *Per Curiam* unpublished decision; *Siddle II* Docket No. 289 (same).)

### V.   Fee Applications and other Post-Judgment Filings

After summary judgment, the defendants in both cases filed motions that sought to recover all of their attorney's fees and expenses from the Siddles under Rule 54 and/or the Siddles' attorneys under § 1927.  Given the potential conflicts between the Siddles and their attorneys with respect to these motions, the Siddles' attorneys withdrew their appearances, and the Siddles retained new counsel.[6]  With respect to the Motions for § 1927 Sanctions, Bruce Carr

---

[6]*See Siddle I* Docket No. 404 (granting Parker Motion to Withdraw); *Siddle II* Docket No. 291 (same); *Siddle I* Docket No. 413 (granting Bruce Carr Motion to Withdraw); *Siddle II* Docket No. 295 (same).

13

and Rex Carr have each retained separate counsel, while Parker has represented herself.

On June 22, 2012, the Siddles, without seeking leave of court, filed a Third-Party Complaint against the Rex Carr Law Firm, Rex Carr, and Bruce Carr that was docketed in both cases. (*Siddle I* Docket No. 415; *Siddle II* Docket No. 297). The Third-Party Complaint claims that the Carrs must indemnify the Siddles for any award made against them pursuant to the Rule 54 Motions. The Siddles appear to claim indemnity from the Carrs on the grounds that the Carrs breached their duty of reasonable care and/or breached their fiduciary duty to the Siddles by (1) advising the Siddles to prosecute both cases despite the Releases; (2) failing to properly defend against the Motions for Summary Judgment; and (3) generally failing to use due care. On September 25, 2012, Bruce Carr and Rex Carr filed an Answer to the Third–Party Complaint in both cases. (*Siddle I* Docket No. 442; *Siddle II* Docket No. 321.)

## THE PENDING MOTIONS AND SUPPORTING MATERIALS

The manner in which the Siddles, the Siddles' attorneys, and the defendants have filed the various pending motions has created a mosaic of interlocking briefing across the two cases. For clarity of the record, the court will identify and outline the motions and related filings.[7]

---

[7]The court notes that, in both cases, certain defendants filed demands for fees under Rule 54 and/or demands for sanctions under § 1927 before the Siddles filed their appeal. (*See Siddle I* Docket Nos. 342, 344, 345, and 347; *Siddle II*, Docket Nos. 262, 264, 265, and 272). The Siddles also filed a Motion to Dismiss Crants III's Counterclaim in *Siddle I* before filing their appeal. (*See Siddle I* Docket No. 354.) In *Siddle I*, the court ordered that these motions be termed pending appeal (*see Siddle I* Docket No. 374), but the court did not issue a parallel order in *Siddle II*. Thus, the pending motions were termed in *Siddle I*, but the corresponding motions in *Siddle II* were not. After the appeal was concluded, certain defendants that had previously moved for fees and sanctions filed supplemental motions in both cases (*see Siddle I* Docket Nos. 385-387; *Siddle II* Docket Nos. 284-86), one defendant who previously moved for fees and sanctions did not file a supplemental motion (Cooper), and the remaining defendants filed motions for fees and/or sanctions for the first time following appeal (*see Siddle I* Docket Nos. 393, 435 and 441; *Siddle II* Docket Nos. 312 and 320). In *Siddle I*, the previously filed motions were not re-designated as pending motions following appeal. Under these circumstances, the court will treat all of the

14

# I.  Rule 54 Motions Against the Siddles

- **Crants III (*Siddle I*)**:  Crants III has filed a Rule 54 Motion (*Siddle I* Docket Nos. 393 (Motion), 394 (Memorandum of Law), and 395 (supporting Declaration of Michael Gardner)), which demands $1,197,930.32 in attorney's fees and expenses.

- **Pharos Defendants (*Siddle II*)**: The Pharos Defendants, who were represented by the same counsel as Crants III, have filed a Rule 54 Motion (*Siddle II* Docket Nos. 272 (Motion), 273 (Memorandum of Law), and 274 (supporting Declaration of Michael S. Gardner)), which demands $135,165.52 in attorney's fees and expenses *Siddle II*.

- **Crants (*Siddle I*)**: Crants has filed a Rule 54 Motion (*Siddle I* Docket Nos. 342 (Motion) and 343 (supporting Declaration of Steven A. Riley)) and a Supplemental Rule 54 Motion (*Siddle I* Docket No. 387 (Motion) and 388 (supporting Supplemental Riley Declaration)), which collectively demand $228,027.84 in attorney's fees and expenses in *Siddle I*.

- **Connectgov (*Siddle II*)**: Connectgov, which was represented by the same counsel as Crants, has filed a Rule 54 Motion (*Siddle II* Docket Nos. 262 (Motion) and 263 (supporting Declaration of Steven A. Riley)) and a Supplemental Rule 54 Motion (*Siddle II* Docket Nos. 286 (Motion) and 287 (supporting Supplemental Riley Declaration)), which collectively demand $48,174.78 in attorney's fees and expenses in *Siddle II*.

- **Oaks (*Siddle I*) and LBMC [Oaks' Accounting Firm] (*Siddle II*)**: Oaks and LBMC have filed a joint Rule 54 Motion (*Siddle I* Docket No. 344 (attaching Declarations of Johannes Kingma, John Day, Michael Downey, and Larry Thrailkill); *Siddle II* Docket No. 264 (same)) and a Supplemental Rule 54 Motion (*Siddle I* Docket No. 385 (attaching Supplemental Declarations of Kingma, Day, Downey, and Thrailkill); *Siddle II* Docket No. 284 (same)), which collectively demand $326,630.82 in attorney's fees and expenses across both cases.[8]

---

motions as pending for purposes of this Memorandum and the associated Order, regardless of whether motions appear as "pending" motions on the docket.

[8]The motion papers filed by Oaks and LBMC include both a demand for fees from the Siddles under Rule 54 and a demand for fees as a § 1927 sanction against the Siddles' former counsel in both cases.  The motion papers filed by Cooper and Crawford/GSRM also combine the separate demands under Rule 54 and § 1927.  For ease of reference only within the text of this opinion, the court will treat each of these combined demands as two separate motions: one under Rule 54 against the Siddles and one under § 1927 against the Siddles' former counsel.

15

- **Attorney Crawford (*Siddle I*) and GRSM [his law firm] (*Siddle II*)**: Crawford and GSRM have filed a joint Rule 54 Motion (*Siddle I* Docket Nos. 345 (Motion) and 346 (supporting Declaration of Tim Edwards); *Siddle II* Docket Nos. 265-66 (same)) and a Supplemental Rule 54 Motion (*Siddle I* Docket No 386 (with supporting Supplemental Edwards Declaration at Ex. 1)); *Siddle II* Docket No. 285 (same)), which collectively demand $286,251.88 across both cases.

- **Linda Cooper (*Siddle I*)**:  Linda Cooper has filed a Rule 54 Motion (Docket No. 347 (attaching supporting Affidavit of James H. Drescher)), which demands $13,164.32 in *Siddle I*.

## II.  Motions for § 1927 Sanctions

- **Crants III (*Siddle I*) and the Pharos Defendants (*Siddle II*)**:  Crants III and the Pharos Defendants have also filed a joint Motion for § 1927 Sanctions (*Siddle I* Docket Nos. 435 (Motion) and 436 (Memorandum of Law); *Siddle II* Docket Nos. 312-13 (same)), in which (1) Crants demands all of his fees and expenses ($1,197,930.22) from Bruce Carr and Rex Carr as a sanction in *Siddle I*; (2) and the Pharos Defendants demand all of their fees and expenses ($135,165.52) from Bruce Carr and Rex Carr as a sanction in *Siddle II*.

- **Crants (*Siddle I*) and ConnectGov (*Siddle II*)**:  Crants and ConnectGov have filed a joint Motion for § 1927 Sanctions (*Siddle I* Docket No. 441; *Siddle II* Docket No. 320), in which (1) Crants demands all of his fees and expenses ($228,027.84) from Rex Carr and Bruce Carr as a sanction in *Siddle I*; and (2) Connectgov demands all of its fees and expenses ($48,174.78) from Rex Carr and Bruce Carr as a sanction in *Siddle II*.

- **CPA Oaks (*Siddle I*) and LBMC [Oaks' accounting firm] (*Siddle III*)**:  Oaks and LBMC have demanded all of their fees and expenses ($326,630.82) from "plaintiffs' counsel" as a sanction under § 1927 across both cases. (*See Siddle I* Docket Nos. 344 and 385; *Siddle II* Docket Nos. 264 and 285).

- **Linda Cooper (*Siddle I*)**:  Linda Cooper has demanded the full amount of her attorney's fees and expenses  – $13,164.32 – from "plaintiffs' counsel" as a sanction under § 1927.  (*See Siddle I* Docket No. 347.)

- **Attorney Crawford (*Siddle I*) and GSRM [Crawford's Law Firm] (*Siddle II*)**: Crawford and GSRM have demanded the full amount of their attorney's fees and expenses across the two cases – $286.251.88 – from

16

Rex Carr, Bruce Carr, and Parker as a sanction across both cases. (*See Siddle I* Docket Nos. 345-46 and 386; *Siddle II* Docket Nos. 265-66; 285.)

## III.    Responses to the Motions for Attorney's Fees and/or Sanctions

The Siddles, Parker, Rex Carr, Bruce Carr, and the Rex Carr Law Firm have each filed individual responses to the defendants' motions.

- **Bruce Carr**: In *Siddle I* and *Siddle II*, Bruce Carr has filed a Response to the Motions for § 1927 Sanctions (*Siddle I* Docket No. 455 and *Siddle II* Docket No. 334), in which he argues that (1) the court should not award fees against him as a sanction under § 1927 because the defendants have not made the requisite showing; and (2) even if sanction is appropriate, the fees demanded are unreasonable and the court should at least exclude any fees incurred on appeal.

- **Siddles**: While their appeal was pending, the Siddles (then represented by Bruce Carr) filed a Response in opposition to the then-pending motions for attorney's fees (*Siddle I* Docket No. 353; *Siddle II* Docket No. 270), in which they argued, in most relevant part, that some defendants might be seeking to "double-recover" by filing identical requests for fees in each case.[9]  After the Sixth Circuit affirmed the district court's rulings on appeal, the Siddles (represented by new counsel) filed a Response in opposition to the Rule 54 Motions (*Siddle I* Docket No. 457; *Siddle II* Docket No. 336), in which they argue that (1) Crants III, Crants, and Cooper failed to authenticate the bills supporting their fee requests; (2) each fee request is unreasonable for the reasons stated in Bruce Carr's opposition brief; and (3) to the extent the court awards fees, the court should assess those fees against Bruce Carr and Rex Carr under § 1927, not the Siddles.[10]  The Siddles have also filed a motion asking the court to determine liability for fees and to conduct a hearing concerning the reasonableness of the fees claimed. (*Siddle I* Docket No. 454; *Siddle II* Docket No. 333).

---

[9]The Siddles also argued that the court should defer ruling on the motions until the Sixth Circuit addressed the Siddles' then-pending Notices of Appeal.  The court agreed and held the pending motions in abeyance pending the conclusion of the appeal.  (*Siddle I* Docket No. 357; *Siddle II* Docket No. 275.)  That argument is now moot.

[10]Aside from incorporating objections asserted by Bruce Carr, the Siddles have not articulated any additional specific challenges to the billing entries contained in the billing information filed relative to each defendant.

17

- **Rex Carr & the Rex Carr Law Firm**:  In *Siddle I* and *Siddle II*, Rex Carr has filed a Response in opposition to the Rule 54 Motions (*Siddle I* Docket No. 429 (with supporting Affidavit of Rex Carr at Ex. 1); *Siddle II* Docket No. 335 (same)) and a Response in opposition to the Motions for § 1927 Sanctions (*Siddle I* Docket No. 456; *Siddle II* Docket No. 335).  The Rex Carr Law Firm, through Rex Carr, has also filed a separate Response to the Motions for § 1927 Sanctions that appears to be identical to Rex Carr's individual Response to those motions.  (*Siddle I* Docket No. 430; *Siddle II* Docket No. 305)).  Essentially, Rex Carr argues that he should not be sanctioned because his only participation in either case was as counsel of record for a five-month period in *Siddle I* before transfer, and that he engaged in no sanctionable conduct within that time frame.  He also argues that § 1927 does not apply to law firms.

- **Mary Parker**: In *Siddle I* and *Siddle II*, Mary Parker has filed a Response in opposition to the Motions for Sanctions (*Siddle I* Docket Nos. 431 (Response) (attaching supporting Affidavit of JD Lee, Affidavit of Richard Knudsen, and Affidavit of Mary Parker) [refiled at Docket No. 434] and 432 (corrected supporting Affidavit of Mary Parker)); *Siddle II* Docket No. 308).  Parker argues that, for various reasons, she should not be sanctioned in either case.

Several defendants have filed Replies regarding the pending motions, as follows:

- **Crants (*Siddle I*) and Connectgov (re Rule 54 Motion)**:  Crants and Connectgov filed Replies concerning their Rule 54 Motions (*Siddle I* Docket No. 473 (Crants); *Siddle II* Docket No. 349)), in which they argue that (1) the billing records attached to the Riley Declarations fall within the "business records" exception to the hearsay rule, *see* Fed. R. Evid. 803(6), and (2) the fees and expenses their attorneys charged were reasonable.[11]

- **Crants III (*Siddle I*) (re Rule 54 Motion)**:  Crants III filed a Reply concerning his Rule 54 Motion (*Siddle I* Docket No. 467), in which he argues that (1) the billing records filed in support of the motion fall within the business records exception to the hearsay rule, Fed. R. Evid. 803(6); (2) the court has authority to award fees incurred on appeal under M.D. Tenn. Local Rule 54.01; and (3) the Siddles conceded in their Response

---

[11]Crants and ConnectGov also filed a joint "Response" to Parker's Response to their Motion for § 1927 Sanctions, in which they clarified that they are not seeking to recover attorney's fees and expenses from Parker.  (*Siddle I* Docket No. 434; *Siddle II* Docket No. 309.)

that Crants III is otherwise entitled to fees and expenses.

- **Crants III (*Siddle I*) and the Pharos Defendants (*Siddle II*) (re Joint Motion for § 1927 Sanctions):** Crants III and the Pharos Defendants filed a joint Reply concerning their joint Motion for § 1927 Sanctions against Rex Carr and Bruce Carr (*Siddle I* Docket No. 468; *Siddle III* Docket No. 345)), in which they argue that (1) the Carrs knew or reasonably should have known that both cases were frivolous, (2) the fact that the parties engaged in extensive discovery and briefing does not weigh against finding that sanctions are warranted under § 1927, (3) the court has jurisdiction to award fees incurred on appeal under M.D. Tenn. L.R. 54.01, (4) the fees demanded by Crants and the Pharos Defendants are reasonable, and (5) Rex Carr should be held jointly and severally liable with Bruce Carr in both *Siddle I* and *Siddle II*.

- **Crawford (*Siddle I*) and GSRM (*Siddle II*) (Regarding Joint Rule 54 Motion and § 1927 Motion)**: Crawford and GSRM filed a joint Reply (*Siddle I* Docket No. 459 (attaching Supplemental Declaration of Tim Edwards); *Siddle II* Docket No. 337 (same)) concerning both their Rule 54 demand and their demand for sanctions under § 1927. In the Reply, Crawford and GSRM assert that they seek to hold Parker liable under § 1927 (along with Bruce Carr and Rex Carr). With regard to the Siddles, Crawford and GSRM argue that (1) the Siddles have not disputed that the April 6 Release entitles Crawford and GSRM to their fees; and (2) to the extent the Siddles challenge the reasonableness of the fees, those concerns are addressed by an attached Supplemental Declaration of Tim Edwards. With regard to Bruce Carr, Crawford and GSRM argue that (1) Bruce Carr knew *Siddle I* and *Siddle II* were frivolous when he filed them and, in addition, he pressed for unnecessary discovery of Crawford and GSRM, (2) appellate fees are recoverable generally and under the April 2006 Release, and (3) the fees requested are appropriate under § 1927 and otherwise reasonable. The Crawford and GSRM Reply does not address Rex Carr's arguments.

Cooper, Oaks, and the Pharos Defendants did not file reply briefs concerning their respective Rule 54 Motions. Cooper and Oaks did not file reply briefs concerning their respective Motions for § 1927 Sanctions against "plaintiffs' counsel." Also, aside from clarifying that they are not pursuing sanctions against Mary Parker, Crants and ConnectGov did not file a reply concerning their joint Motion for § 1927 Sanctions against Bruce Carr and Rex Carr.

19

**ANALYSIS**

I.      **Rule 54(d) Motions**

      A.      **Rule 54 Procedures**

      Under Fed. R. Civ. P. 54(d)(1), costs other than attorney's fees are allowed to the "prevailing party."  Under Fed. R. Civ. P. 54(d)(2), a prevailing party may seek attorney's fees by a motion that sets forth, *inter alia*, the grounds entitling that party to an award of fees.

      Under M.D. Tenn. Local Rule 54.01(b), a Rule 54 motion must include (1) a memorandum establishing the court's authority to issue the award and, if necessary, why the moving party should be treated as the "prevailing party" in the lawsuit; (2) an affidavit of counsel setting forth in detail the number of hours spent on each aspect of the case, the rate customarily charged by counsel for such work, the prevailing rate charged in the community for similar services, and any other factors which the Court should consider in making the award. Under Local Rule 54.01(b)(2), "a motion for an award of attorney's fees and related nontaxable expenses for appellate and Supreme Court litigation in the case shall be made within thirty (30) days of the entry of the Sixth Circuit mandate and, if applicable, thirty (30) days from the denial of a petition for writ of certiorari or other final decision of the Supreme Court."

      B.      **Siddles' Liability for Fees Before this Court and on Appeal**

      The April 6 Release provides as follows:

> In the event that any action, suit, or other proceeding is instituted concerning or arising out of the Agreement, the prevailing party shall recover all of such party's costs and attorney's fees incurred in such action, suit, or other proceeding, including any and all appeals therefrom.

Here, the Siddles do not contest that the moving defendants in both cases, all of whom prevailed on summary judgment, constitute "prevailing parties" under ¶ 3(b) of the April 6 Release and

20

Fed. R. Civ. P. 54(d)(2). Thus, under the express terms of the April 6 Release, the Siddles must reimburse all of the defendants' reasonable attorney's fees and costs, including fees and costs incurred on appeal.[12] The defendants who seek appellate fees have complied with the timing requirements set forth in Local Rule 54.01(b)(2). Thus, the only remaining issues for the court to resolve with respect to the Rule 54 Motions are (1) whether the fees and expenses requested are supported by appropriate documentation and (2) are reasonable under the circumstances.

### C. Legal Standard for Granting Fees

"The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). "[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "There is a strong presumption that this lodestar figure represents a reasonable fee." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (quoting *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986)). "[H]ourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Coulter v. State of Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986).

---

[12]In their brief, the Siddles purport to incorporate (without analysis or application) Bruce Carr's objection that an award of appellate fees against him is inappropriate under § 1927 because the Sixth Circuit did not find the appeal to be frivolous. Whatever the merits of Bruce Carr's objection, it does not apply to the Siddles, who are *contractually liable* under the April 6 Release to pay the reasonable fees and expenses incurred by the defendants in opposing the Siddles' unsuccessful appeal.

After determining the lodestar amount, the court may adjust the fees upward or downward based on a number of considerations. The trial court may consider the twelve factors set forth by the Fifth Circuit in *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See Graceland Fruit, Inc. v. KIC Chems, Inc.*, 320 F. App'x 323, 328 (6th Cir. 2008) (stating that the Sixth Circuit has endorsed view that district court may apply *Johnson* factors); *Reed v*, 179 F.3d at 471 n.3 (noting *Johnson* factors). These factors include: (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Graceland Fruit*, 320 F. App'x at 329 (citing *Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)); *Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002. The Sixth Circuit has recognized that, often, these factors are naturally blended into the reasonableness analysis. *Paschal,* 297 F.3d at 435. However, the Sixth Circuit "does not require that the district court apply the [*Johnson/Paschal*] factors; rather, the touchstone for reasonableness is simply determining whether a fee 'is one that is adequate to attract competent counsel, but not produce windfalls to attorneys.'" *Nature Conservancy, Inc. v. Sims*, 680 F.3d 672, 678 (6th Cir. 2012) (quoting *Paschal*, 680 F.3d at 434) (internal citations omitted).[13]

---

[13]The twelve factors articulated in *Johnson* were summarized in the context of awarding reasonable attorney's fees to a prevailing private party in federal civil rights litigation, *see*

The starting point for determining the reasonableness of a requested fee is the "lodestar" analysis, whereby the requested fee is compared with the amount generated by multiplying the number of hours reasonably worked on the litigation by the reasonable hourly rate. *U.S. Structures v. J.P. Structures*, 130 F.3d 1185, 1193 (6th Cir. 1997). A reasonable hourly rate is determined by considering the skill, experience, and reputation of the attorneys involved and the market in which they practice. *Adlock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir.

_____

*Johnson*, 488 F.2d at 716 (quoting 42 U.S.C. § 2000e-5k), and the factors are typically applied in that context under the 42 U.S.C. § 1988, which was passed after *Johnson*. *See, e.g.*, *Paschal*, 297 F.3d at 435; *see also Blanchard*, 489 U.S. at 91-92 ("[I]n many past cases concerning the award of attorney's fees under § 1988, we have turned our attention to *Johnson* [], a case decided before the enactment of the Civil Rights Attorney's Fee Award Act of 1976 [*i.e.*, 42 U.S.C. § 1988].") The Sixth Circuit has indicated that a district court *may* also consider the *Johnson* factors when evaluating a Rule 54 fee application made pursuant to a contractual fee-shifting provision, although the court is not required to do so. *See Nature Conservancy*, 680 F.3d at 678; *Graceland Fruit*, 320 F. App'x at 323-24 (articulating *Johnson* factors in awarding fees under contractual fee-shifting clause); *see also Guesthouse Int'l Franchise Sys., Inc. v. British Am. Properties MacArthur Inn, LLC*, No. 3:07-0814, 2009 WL 792570, at *1, *9-*10 (M.D. Tenn. Mar. 23, 2009) (same). Even to the extent a district court considers the *Johnson* factors in the context of a contractual fee-shifting provision, no one factor is dispositive. *Graceland Fruit*, 320 F. App'x 329 (citing *Blanchard*, 489 U.S. at 91 n.5).

Here, some of the defendants' initial fee applications assume that the court will apply the *Johnson* factors (*see, e.g.*, *Siddle I* Docket No. 395) (Crants III), Gardner Decl. ¶ 16 (stating his understanding that court will calculate "lodestar" and apply the "so-called *Johnson* factors")), whereas other defendants' fee applications do not reference the *Johnson* factors at all. (*See, e.g.*, *Siddle I* Docket No. 344 (Oaks) (demanding full value of fees and expenses without reference to *Johnson* factors)). The Siddles recite the *Johnson* factors in their opposition briefs – although they largely fail to apply them – whereas Bruce Carr does not reference them at all. Some defendants replied by referencing the *Johnson* factors (*see Siddle I* Docket No. 459 (Crawford/GSRM), Ex. 3, Supp. Edwards Decl. (addressing *Johnson* factors)), while other defendants did not file reply briefs and, therefore, never directly addressed the application of those factors here. Notwithstanding this lack of uniformity, the court, in addressing each fee application, will simply consider whether any relevant *Johnson* factors favor a departure from otherwise reasonable fees and expenses actually charged to each defendant, taking into account any objections raised by the Siddles and/or Bruce Carr that arguably implicate particular factors. The court has incorporated its consideration of any relevant factors into its analysis, but, in the interest of judicial economy, the court will not specifically reference the *Johnson* factors relative to each particular fee application.

2000).  If the requested fee is essentially in line with the "lodestar," then there is a strong

presumption that the requested fee is reasonable and recoverable.  *Id.*

### D.      Documentation Supporting Fee Requests

The Siddles concede that the fee applications filed by Oaks, LBMC, Crawford and

GSRM are supported by admissible forms of documentation.  (*See Siddle I* Docket No. 457 at p.

4; *Siddle II* Docket No. 336 at p. 4.)  However, the Siddles argue that the documentation

supporting the fee applications by Crants (*Siddle I*), Crants III (*Siddle I*), Cooper (*Siddle I*),

ConnectGov (*Siddle II*), and the Pharos Defendants (*Siddle II*) are based on "unauthenticated

hearsay."

The Siddles' position relative to Crants, Crants III, Cooper, ConnectGov, and the Pharos

Defendants is without merit.  As an initial matter, the handful of courts to directly address the

issue have found that, when properly authenticated, itemized billing records attached to a fee

application fall within the business records exception of Fed. R. Evid. 803(6).  *See Padgett v.*

*Loventhal*, No. C 04-03946 JW, 2007 WL 3071031, at *1 (N.D. Cal. Oct. 19, 2007); *LINC*

*Finance Corp. v. Onwuteaka*, 129 F.3d 917, 923 (7th Cir. 1997).  At any rate, Local Rule

54.01(b) simply requires "an affidavit of counsel" that specifies, *inter alia*, the number of hours

spent on each aspect of the case and the rates customarily charged for that work.  Courts

routinely accept itemized contemporaneous billing statements and/or affidavits itemizing the

legal fees and expenses as adequate documentation to support a fee award.  *See, e.g.*, *United*

*Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G&M*

*Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984); *Imwalle v. Reliance*

*Med. Prods., Inc.*, 515 F.3d 531, 553-54 (6th Cir. 2008); *Harrison v. Clemente*, 93 F. Supp. 2d

856, 859 (N.D. Ohio 2000); *Knop v. Johnson*, 712 F. Supp. 571, 576 (W.D. Mich. 1989). Here, Crants, Crants III, ConnectGov, and the Pharos Defendants have submitted affidavits of counsel that attach itemized billing records that each affiant has authenticated as contemporaneous records generated and issued by each referenced law firm in the ordinary course of business. Similarly, the Drescher Affidavit filed in support of Cooper's application provides sworn itemized billing entries and a list of expenses within the text of the affidavit. The court finds that all of these submissions comply with Local Rule 54.01 and constitute appropriate forms of documentation to support a fee award here.

### E.     The Siddles' and Bruce Carr's Generalized Objections

Although the Siddles' brief does not assert any independent objections to the reasonableness of the fee applications, the Siddles have incorporated the objections set forth in Bruce Carr's briefs in opposition to the Motions for § 1927 Sanctions. At the same time, the Siddles have explicitly demanded that the court hold Bruce Carr and Rex Carr liable (through § 1927 sanctions) for any award made pursuant to the Rule 54 Motions and have also filed a Third-Party Complaint that demands indemnification from Bruce Carr, Rex Carr, and the Rex Carr Law Firm. Furthermore, the defendants all demand the entirety of their legal fees from Bruce Carr and Rex Carr. Therefore, Bruce Carr and Rex Carr – not just the Siddles – have an interest in the reasonableness of the fee applications. Under these circumstances, particularly where the Siddles have incorporated Bruce Carr's arguments into their brief, the court will address the reasonableness of the Rule 54 applications in light of Bruce Carr's objections.[14]

---

[14]The Siddles' brief is not a model of clarity concerning its position relative to the fees and expenses demanded by Crants III. The brief states that Crants III's application appears to meet the *Johnson* factors, but the brief also incorporates Bruce Carr's challenges to Crants III's demands, including Bruce Carr's specific objections to the Bickel & Brewer billing entries.

As an initial matter, two of the arguments that the Siddles purport to incorporate are inapplicable for Rule 54 purposes under the circumstances presented here. First, as discussed in FN 11 *supra*, the Siddles are contractually liable for appellate fees incurred by the defendants on appeal, regardless of the standard applicable for sanctions against the Siddles' counsel under § 1927. Second, to the extent Bruce Carr argues that the fees demanded by the defendants are not attributable to his (Bruce Carr's) "vexatious" conduct, that argument is specific to the § 1927 standard for assessing fees against him and does not impact the Siddles' contractual obligation to pay the entirety of the defendants' reasonable attorneys' fees.

However, the Siddles have incorporated certain relevant – albeit largely generalized – challenges asserted by Bruce Carr to the reasonableness of the fee applications. First, Bruce Carr argues that the hourly rates charged by some of the firms were unreasonably high and that, as a corollary, the court should impose an hourly rate corresponding to the "lowest rates" charged by any counsel in the case. However, Bruce Carr does not identify which firm charged the "lowest rates," nor does he provide any case law establishing that this court must impose a "lowest common denominator" approach when awarding fees in a complex case involving multiple defendants and multiple firms. Indeed, Bruce Carr's objection does not even acknowledge that lawyers in different legal markets were required to work on this case,

---

Notwithstanding this potential contradiction, the court will consider Bruce Carr's objections when analyzing the reasonableness of the fees and expenses demanded in Crants III's Rule 54 Motion, because (1) the Siddles have incorporated, albeit inartfully, Bruce Carr's objections, (2) Bruce Carr has an independent interest in the fee award, for which the Siddles seek or will seek indemnification from him, and (3) the court has, in any case, an independent obligation to find whether the requested fees are reasonable. *See Binta K. ex rel. S.A. v. Darin Gordon*, — F. 3d —, 2013 WL 1136544, at *15 (6th Cir. Mar. 20, 2013) ("[H]ours that are not properly billed to one's *client* are not properly billed to one's *adversary* . . . .") (emphases in original) (quoting *Hensley*, 461 U.S. at 434)).

including local counsel for certain defendants in the Southern District of Illinois and, after transfer, new local counsel in this district.

Second, Bruce Carr points out that some defendants charged more than others to "obtain the same result" (summary judgment, presumably), which he argues demonstrates that some (unspecified) amount of the fees charged were unreasonable. However, with the exception of a handful of specific references to the Bickel & Brewer invoices submitted on behalf of Crants III, Bruce Carr's arguments regarding time spent by the various firms are generalized and do not reference particular firms or defendants. Thus, of the myriad of firms at issue here, Bruce Carr and (by incorporation) the Siddles have addressed only one, and they have done so largely at a high level of generality. Moreover, even with respect to the Bickel & Brewer invoices, Bruce Carr and the Siddles do not identify what reductions the court should make, nor, for that matter, do they suggest any guidelines to the court for making a reduction. Furthermore, neither Bruce Carr nor the Siddles have objected – even at a general level – to the reasonableness of the expenses demanded by each defendant here.

Notwithstanding the Siddles' and Bruce Carr's lack of particularized objections, the court has closely examined the affidavits and associated billing records filed by each defendant, some of whom seek reimbursement for charges incurred by multiple firms during the course of the two cases. For clarity of the record, the court will address each fee application and the bills corresponding to each firm separately.

## II.     Reasonableness of Individual Fee Applications

### A.     Common Factors Applicable to All Defendants

The Siddles' allegations in the two cases were complex and threatened all of the

defendants with substantial liability based on multiple causes of action under both federal and state law. In *Siddle I*, the Siddles filed a 77-page Amended Complaint that demanded $125 million in compensatory and punitive damages from the defendants (without distinction) based on, *inter alia*, multiple RICO claims, federal copyright claims, Exchange Act claims, and state law claims for various forms of fraudulent conduct related to sophisticated financial transactions. The Siddles also demanded declaratory and injunctive relief against the defendants, as well as their attorney's fees. In *Siddle II*, the Siddles filed a 32-page Complaint that demanded $81,925,260.00 in compensatory and punitive damages (plus attorney's fees) from the defendants based on multiple RICO claims and a state law conspiracy claim. *Siddle II* similarly concerned sophisticated financial transactions. At a later point in both cases, the Siddles computed their damages at over $1 billion. (*See Siddle I* Docket No. 346, Edwards Decl. ¶ 10.) Taken cumulatively, the defendants required sophisticated legal counsel to defend themselves in complex cases with "bet the company" levels of damages at stake.

In the course of the two cases, the Siddles continued to press their claims regardless of the language of the Releases, regardless of the persuasive defenses asserted by the defendants, and in spite of court orders that essentially settled particular legal issues. For example, the Siddles filed *Siddle I* in the Southern District of Illinois despite the fact that the forum selection clause in the April 6 Release obligated the Siddles to sue in Nashville. Then, in spite of Judge Murphy's enforcement of the forum selection clause in *Siddle I* and again in *HSC*, the Siddles nevertheless filed *Siddle II* in the Southern District of Illinois.

After transfer of each case to this court, the Siddles demanded broad discovery from the defendants and, in at least some instances, refused to provide meaningful discovery to the

defendants in compliance with the federal rules. For example, the Siddles served deficient Rule 26 disclosures that obscured the bases for their claims against particular defendants, thereby driving up defense costs. The Siddles also repeatedly filed briefs and supporting sworn documents from Bruce Siddle that contained inaccurate representations and that failed to comply with the federal rules.

Furthermore, after the court issued *Crants I*, in which it found that the Releases were enforceable, the Siddles continued to press their claims against the remaining defendants based on grounds that the court had previously rejected, driving up defense costs on all defendants even further. Thus, in addition to the ordinary costs of litigation, all of these actions by the Siddles required the defendants to accrue additional legal fees.

The Siddles also filed a consolidated appeal to the Sixth Circuit, which the defendants fully briefed and argued, thereby incurring additional legal fees in defending themselves and enforcing the Releases.

Notwithstanding the Siddles' efforts to protact the litigation, counsel for all of the defendants obtained a full judgment in favor of their clients and successfully defended those judgments on appeal. Given the substantial damages demands by the Siddles, obtaining these judgments and defending them on appeal represented significant victories for each defendant.

### B. Linda Cooper Fee Application

Cooper was represented by the law firm of Drescher & Sharp, P.C.,[15] which charged $275 per hour for attorney James Drescher's time, $200 per hour for attorney David Burn's time, and $95 per hour for paralegal Erika Thatcher's time. Cooper seeks $13,164.32 in attorney's fees

---

[15]The firm is now DHPM, PC.

and expenses, reflecting (1) 43.3 attorney hours and 7.8 paralegal hours at the aforementioned rates; (2) $152.75 in photocopying and postage expenses; and (3) $433.07 in legal research and travel expenses.  The Drescher Affidavit contains itemized billing descriptions setting forth the work performed by each legal professional.

The Siddles and Bruce Carr have not asserted any specific objections concerning the fees and expenses that Cooper charged.  Based on the court's experience with this law firm and its familiarity with the rates charged by other comparable law firms within this judicial district, the court finds that the rates charged by Drescher & Sharp for its representation of Cooper were reasonable.[16]  The court also finds that the time spent by Drescher & Sharp was reasonable given the complexity of the case and the results obtained, *i.e.*, summary judgment.[17]  Also, in the absence of any objections, the court also finds that the requested expenses are reasonable.

The court finds no basis for any further adjustments from the fees and expenses that Cooper actually incurred.  Accordingly, the court will award the requested $13,164.32 in attorney's fees and expenses in favor of Cooper in *Siddle I*.

---

[16]*See BKB Props, LLC v. SunTrust Bank*, No. 3:08-cv-00529, 2010 WL 200750, at *8 (M.D. Tenn. Jan. 13, 2010) ($170 per hour and $330 per hour reasonable); *Cummings, Inc. v. BP Prods, N.A., Inc.*, Nos. 3:06-0890, 3:07-0834, 2010 WL 796825, at *4 n.3 (M.D. Tenn. Mar. 3, 2010) ($400-460 per hour for experienced partners and $215-$270 per hour for associates in 2009 reasonable); *see also* National Law Journal 2008 and 2009 Billing Surveys [*Siddle I* Docket No. 388, Exs. B and C] (reflecting that (1) Tennessee-based Baker Donelson charged $236-$595 per hour for partners and $210-$390 per hour for associates; and (2) Nashville-based Bass, Berry & Sims, PLC charged between $240-$575 per hour per partner and $180-$310 per hour for associates).

[17]The fees that Cooper incurred were much lower than those incurred by other defendants, which is understandable because Cooper was not a primary target of the Siddles' claims, was not the target of significant discovery (unlike other defendants), and played a minor role in defending the case.  Indeed, after she filed an Answer and until judgment entered in her favor, Cooper filed only a two-page follow-on Motion for Summary Judgment arguing that, under the court's holding in *Crants I*, the claims against her were barred by the Releases.

30

### C. Crawford and GSRM Fee Application

Crawford (*Siddle I*) and GSRM (*Siddle II*) have jointly moved for attorney's fees. In both cases, Crawford and GSRM were represented by the law firm of Glassman, Edwards, Wyatt, Tuttle & Cox, P.C. ("GEWTC"), a Memphis-based firm. GEWTC spent $251,224.28 in attorney's fees and expenses across the two cases before appeal, and spent $35,027.60 across the two cases after the Siddles appealed. (*See Siddle I* Docket No. 386, Ex. 1, Supp. Edwards Decl. ¶¶ 4 and 5.)

GEWTC's billing invoices reflect work performed by GEWTC from February 25, 2009 – following transfer of *Siddle I* to this district – through January 9, 2012.[18] GEWTC charged $175.00 per hour for attorneys with five or more years of trial experience, $150.00 per hour for attorneys with less than five years of trial experience, and $85.00 per hour for paralegal time. GEWTC performed approximately 1,500 hours of work before appeal, and approximately 200 hours thereafter. The billing records contain itemized billing descriptions and itemized expenses.

The Siddles and Bruce Carr have not asserted any specific challenges to the fees or the expenses demanded by Crawford and GSRM. Indeed, the rates charged by GEWTC are even less than the otherwise reasonable rates charged by other Nashville-based counsel in this case and are plainly reasonable here. *See supra* FN 16.

The court finds that the billing records are sufficiently detailed and reflect an appropriate amount of work performed by GEWTC in the two cases. The Siddles demanded broad discovery

---

[18]Before transfer of each case, Crawford and GSRM were represented by the law firm of Baker Sterchi Cowden & Rice, LLC in Saint Louis, Missouri. Crawford and GSRM have not filed any invoices reflecting work performed on their behalf before transfer of each case.

31

from Crawford and GSRM, including document requests that required GEWTC to conduct an extensive privilege review of over 10,000 pages of documents to ensure that Crawford, who is an attorney, did not violate the attorney-client privilege for any records produced by him or his law firm in this litigation. Furthermore, the Siddles' refusal to concede that the Releases were enforceable – after discovery and even after the court's *Crants I* opinion – forced Crawford and GSRM to file motions for summary judgment and to accrue additional fees reviewing submissions by the Siddles and the defendants. In their opposition, the Siddles asserted already discredited arguments, causing Crawford and GSRM to file reply briefs addressing those arguments. Crawford and GSRM incurred fees on appeal, including filing a detailed legal brief and appearing at oral argument. Ultimately, GEWTC obtained summary judgment on behalf of Crawford and GSRM in both cases and successfully defended them on appeal.

Under these circumstances, the court finds no other basis for adjusting the fees demanded by Crawford and GSRM. Therefore, the court will award the requested $286,251.88 to Crawford and GSRM for their combined fees and expenses across both cases.

### D. Oaks and LBMC Fee Application

Oaks and LBMC demand $326,630.82 in combined fees and expenses in the two cases.[19] They seek fees for charges by the following retained counsel: (1) Carlock, Copeland, & Stair, LLP ("Carlock Copeland"), an Atlanta-based firm that served as lead counsel for Oaks and LBMC in both cases (*see Siddle I* Docket No. 385, Ex. 1, Supp. Kingma Aff.); (2) Hinshaw & Culbertson, LLC ("Hinshaw & Culbertson"), which acted as local counsel in the Southern District of Illinois until transfer of each case; (*see id.*, Ex. 4, Supp. Downey Decl.); (3) the law

---

[19]Oaks and LBMC have not allocated the $326,639.82 in fees and expenses between *Siddle I* and *Siddle II*.

32

offices of John Day and its predecessor firm, Day & Blair, P.C. (collectively, "LOJD"), which acted as local counsel within this district after transfer of each case (*see id.*, Ex. 2, Supp. Day Decl.); and (4) Thrailkill, Harris, Wood & Boswell, PLC ("Thrailkill Harris"), which assisted in the review and preparation of court filings and the formulation of defense strategy in each case after transfer (*id.*, Ex. 3, Supp. Thrailkill Aff.).

1. Hinshaw & Culbertson – S.D. Ill. Local Counsel

Hinshaw & Culbertson charged a combined $31,654.77 in the cases for attorney's fees and expenses for defending Oaks and LBMC in the Southern District of Illinois. (Downey Aff. ¶ 4.) The firm billed 152.2 total hours of attorney time, charging $220 per hour for partners and $195 per hour for associates, even though Downey, one of the partners on the case, generally charges an average rate over $300 per hour. (*Id.* ¶ 7.)

The Siddles and Bruce Carr have asserted no specific objections concerning the reasonableness of the fees charged by Hinshaw & Culbertson, which are well within the rates reasonably charged for equivalent attorneys appearing before the Southern District of Illinois.[20] *See, e.g.*, *Sierra Club v. Franklin Cnty. Power of Ill.*, 670 F. Supp. 2d 825, 835 (S.D. Ill. 2009) ($275 to $450 per hour reasonable).

---

[20]*See, e.g.*, *Sierra Club v. Franklin Cnty. Power of Ill.*, 670 F. Supp. 2d 825, 835 (S.D. Ill. 2009) ($275 to $450 per hour reasonable); *see also Tate v. Ancell*, No. 08-0200-DRH, 2012 WL 2521614, at *2 (S.D. Ill. June 28, 2012) ($210.00 to $444.26 per hour reasonable); *Cook v. IPC Int'l Corp.*, Civil No. 09-275-GPM, 2011 WL 2683178, at *2 (S.D. Ill. July 11, 2011) ($300 per hour reasonable); *Sato & Co, LLC v. S&M Produce, Inc.*, No. 08-CV-7352, 2010 WL 3273927, at *3 (N.D. Ill. Aug. 16, 2010) ($325 per hour for partner and $215 per hour for associate reasonable); *Norinder v. Fuentes*, No. 10-CV-391-WDS, 2010 WL 4781149 (S.D. Ill. Nov. 18, 2010) ($300 per hour reasonable). Although the parties have not addressed the issue, the court finds that, because Hinshaw & Culbertson appeared in this case only while it was pending before the Southern District of Illinois, in which it served only as local counsel, the fees it charged must have been reasonable within that jurisdiction. At any rate, those fees would also have been reasonable if they were charged within this jurisdiction.

Hinshaw & Culbertson's itemized billing invoices appropriately reflect work performed in (1) defending Oaks between November 2008, shortly after *Siddle I* was filed against Oaks, and February 2009, when *Siddle I* was transferred to this court, and (2) defending LBMC between May 2009, when *Siddle II* was filed against LBMC, and December 2009, just after *Siddle II* was transferred to this court. Defending Oaks required substantial work to brief and argue the applicability of the Releases and the forum selection clause in *Siddle I*, work that was ultimately successful in having the case transferred. After the Siddles filed *Siddle II* in the Southern District of Illinois despite Judge Murphy's previous enforcement of the forum selection clause, Hinshaw & Culbertson was required to perform substantial work again to enforce the forum selection clause on behalf of LBMC. The billing entries reflect reasonable amounts of attorney time spent in both cases before transfer. In light of these findings and in the absence of any specific objections, the court finds that the amount of time spent by Hinshaw & Culbertson was reasonable. Also, the court finds the expenses charged by Hinshaw & Culberston, which the Siddles have not challenged, reasonable.

Under the circumstances, the court finds no basis to adjust the fee award from the fees actually charged by Hinshaw & Culbertson to Oaks and LBMC. Therefore, the court will award Oaks and LBMC $31,654.77 relative to Hinshaw & Culbertson in both cases.

### 2. Carlock & Copeland – Lead Counsel

Carlock & Copeland billed Oaks and LBMC $161,215.92 in the two cases combined, reflecting work performed from February 20, 2009 through December 31, 2011, including approximately 720 hours of work in the two cases before appeal and approximately 110 hours of work thereafter. (*See Siddle I* Docket No. 385, Ex. 1, Supp. Kingma Aff.) Carlock & Copeland

34

charged $190-$195 per hour for partners, $165-$175 per hour for associates, and $80-$85 per hour for paralegals. (*Id.* ¶ 7.) The Siddles and Bruce Carr have not specifically challenged the reasonableness of these rates, which fall well within rates that are reasonable within the Atlanta region and would be reasonable if charged by equivalently experienced counsel within this jurisdiction.[21]

Furthermore, the Siddles and Bruce Carr have not asserted any specific objections to the reasonableness of Carlock Copeland's billing entries, the associated work performed, or the itemized expenses. The court has carefully examined the time entries and associated billing descriptions provided by Carlock Copeland. The court finds that these entries appropriately reflect work performed from February 27, 2009 – following transfer of *Siddle I* to this district – through the date of oral argument before the Sixth Circuit concerning the Siddles' appeal. In *Siddle I*, the Siddles served broad discovery on Oaks while refusing to meaningfully honor their own discovery obligations. For example, through obfuscatory discovery responses, the Siddles refused to clarify the basis for their asserted claims against Oaks. These actions caused Oaks to incur additional discovery-related expenses and caused Oaks to expend additional effort preparing for his deposition.

Also, after the court granted summary judgment to Crants and Crants III based on the Releases and the Siddles declined to dismiss their claims or to stipulate to the preclusive effect of *Crants I*, Oaks and LBMC were both forced to move for summary judgment. As with Crawford and GSRM, the Siddles opposed Oaks' and LBMC's motions and asserted already discredited

---

[21]*See, e.g.*, *Latimore v. Gateway Retrieval, LLC*, 1:12-CV-00286-TWT-JFK, 2013 WL 791258, at *12 (N.D. Ga. Feb. 1, 2013) ($300 per hour for experienced counsel reasonable); *Stewart v. Regent Asset Mgmt. Solutions*, Civil Action File No. 1:10-CV-2552-CC-JFK, 2011 WL 1766018, at *8-*9 (N.D. Ga. May 4, 2011) ($325 per hour reasonable).

arguments in response thereto, causing Oaks and LBMC to file reply briefs addressing those arguments. After Oaks and LBMC were granted summary judgment, the Siddles appealed to the Sixth Circuit, requiring Oaks and LBMC to incur additional legal fees from Carlock and Copeland, who appeared as counsel of record on appeal, filed a brief on behalf of Oaks and LBMC, and appeared at oral argument. Given all of these factors, it is understandable that Oaks and LBMC incurred substantial legal fees and expenses in both cases.

Therefore, relative to Carlock Copeland, the court will award $161,215.92 in combined fees and expenses in favor of Oaks and LBMC in the two cases.

3.      <u>LOJD and Larry Thrailkill – Nashville Local Counsel</u>

LOJD billed Oaks and LBMC for $116,912.19 in attorney's fees and expenses, reflecting approximately 500 hours of attorney and paralegal time across both cases. (Docket No. 385, Ex. 2, Supp. Day Decl. ¶ 4.) The LOJD billing invoices reflect work performed as local counsel for Oaks and/or LBMC between March 2009 (upon transfer of *Siddle I* to this district) and July 2010, when the Siddles filed their appeal of both cases.

The invoices also reflect expenses charged through January 2012, including monthly document management fees. LOJD charged $400 per hour for partners, $165-$250 for associates (rates varying based on seniority), and $100-$120 per hour for paralegal time. (*Id.* ¶ 7.) The Siddles and Bruce Carr have not challenged the reasonableness of these rates, which this court finds are within the reasonable rates charged by competent counsel within this jurisdiction in complex cases.

The billing invoices indicate that LOJD played a substantial role in both cases, including researching and drafting early dispositive motions and associated filings, analyzing the merits of

36

the Siddles' claims, preparing for and participating in case management conferences, identifying discovery deficiencies and working through discovery disputes with the Siddles, reviewing and producing various records on behalf of Oaks and LBMC, and reviewing records produced by other defendants.  Based on the billing records, it does not appear that LOJD billed time associated with drafting the motions for summary judgment filed by Oaks and LBMC or in defending Oaks and LBMC on appeal; instead, Carlock Copeland appears to have shouldered the load with respect to both of those tasks.  Thus, the record does not reflect any duplication in efforts between LOJD and Carlock and Copeland in those fee-intensive aspects of both cases. Under these circumstances, the court finds that the time spent by LOJD was reasonable.

In light of these findings, the court finds no basis to issue an award that varies from the invoices actually billed by LOJD.  Therefore, relative to LOJD, the court will award the requested $116,962.19 in fees and expenses in favor of Oaks and LBMC.

Finally, Larry Thrailkill of Thrailkill Harris, a Brentwood, Tennessee-based firm, charged Oaks and LBMC a total of $16,797.94 across the two cases, reflecting 24.0 hours of work on behalf of Oaks in *Siddle I* (plus $39.94 in expenses) and 10.2 hours of work on behalf of LBMC in *Siddle II*.  (Docket No. 385, Ex. 3, Thrailkill Decl. ¶ 4.)  The billing invoices reflect sporadic work performed between June 2009 (after transfer of *Siddle I*) and October 2010 (during the pendency of the appeal of both cases).  Consistent with the averments in Thrailkill's affidavit, the entries largely reflect strategic advising by Thrailkill, including review of certain key briefing in the case.  Although not stated in the Thrailkill Affidavit, it appears that Larry Thrailkill charged approximately $490 per hour in both cases.  The court finds that this rate is within the range of reasonable rates within this jurisdiction and that it was reasonable for

purposes of this case.  *See supra* FN 16 and *infra* Section E.4.b.  As to the work performed by

Thrailkill, the Siddles and Bruce Carr have not asserted any specific objections, and the court

finds the charges to be substantiated and reasonable.[22]  Accordingly, relative to Thrailkill Harris,

the court will award $16,797.94 in fees and expenses in favor of Oaks and LBMC.

Aggregating these awards, the court finds that the Oaks and LBMC are entitled to

reasonable attorney's fees and expenses of $326,630.82 across both cases.

### E.    Crants III and the Pharos Defendants' Fee Applications

Crants III and the Pharos Defendants were represented by the same counsel in both cases.

They seek to recover fees and/or expenses relative to: (1) Bickel & Brewer ("Bickel & Brewer"),

a Dallas and New York firm that served as lead counsel in both cases; (2) Gallop, Johnson &

Newman, L.C. ("Gallop Johnson"), an Illinois-based firm that served as local counsel for Crants

III in *Siddle I* and for the Pharos Defendants in *Siddle II* before transfer of each case; (3) Leader,

Bulso, Nolan & Burnstein, PLC ("Leader Bulso"), which served as local counsel after transfer

for Crants III in *Siddle I* and for the Pharos Defendants in *Siddle II*; and (4) third-party vendors

who charged for litigation-related services.

#### 1.    Gallop Johnson: S.D. Ill. Local Counsel

Gallop Johnson charged Crants III $6,843.60 for its services in *Siddle I* (*see Siddle I*

Docket No. 395, Gardner Decl., Ex. 3 at p. 22) and the Pharos Defendants $6,928.54 for its

services in *Siddle II* (*see Siddle II* Docket No. 274, Gardner Decl., Ex. 2).  Taken collectively,

the Gallop Johnson invoices appropriately reflect work performed by the firm between

---

[22]Neither the Siddles nor Bruce Carr have specifically objected to the fact that Oaks and LBMC retained two Nashville firms upon transfer, rather than just one.  Regardless, having reviewed the billing records, it does not appear that Thrailkill performed any work that duplicated efforts by Carlock Copeland and LOJD.

November 2008, when *Siddle I* was filed, and February 2009, when *Siddle II* was transferred to this district. Although not stated in the Gardner Affidavits or explicitly set forth in the billing records, the court has extrapolated from the invoices that Gallop Johnson charged approximately $305 per hour for attorney Jeffrey H. Kass, who billed the vast majority of the time, approximately $215 per hour for attorney Peter A. Corsale, who billed a handful of entries, and approximately $150 per hour for "TDS," who, based on the descriptions provided, appears to have been a junior associate or a paralegal.[23] The Siddles and Bruce Carr have not addressed the reasonableness of these rates, which, in any case, are comparable to those awarded within the Southern District of Illinois. *See supra* Section D.1 and FN 20. Therefore, the court finds that the rates charged by Gallop Johnson were reasonable.

The Siddles and Bruce Carr have not specifically addressed the reasonableness of the work performed by Gallop Johnson. The entries indicate that Gallop Johnson assisted in filing initial papers in the Southern District of Illinois, continued to review submissions by other defendants before transfer, assisted Bickel & Brewer in preparing the motions to transfer and/or dismiss the cases, and participated in hearings before the Southern District of Illinois prior to transfer. The court finds that these tasks were appropriate and that the comparable amount of time spent on them in each case was reasonable. The Siddles and Bruce Carr have not challenged the reasonableness of the itemized expenses charged by Gallop Johnson, and the court finds them reasonable.

The court finds no basis to deduct from the fees and expenses actually charged by Gallop

---

[23]Because the Gallop Johnson billing records are not self-explanatory, it would have assisted the court if the Gardner Affidavit had listed, at a minimum, the hourly rates charged by each individual and his or her professional position.

Johnson.  Thus, relative to Gallop Johnson, the court will award a total of $13,772.09 in fees and expenses to Crants III and the Pharos Defendants in the two cases.

2.    Leader Bulso: M.D. Tenn. Local Counsel

Leader Bulso billed fees and expenses of $14,271.91 for its defense of Crants III in *Siddle I*, reflecting approximately 43 hours of work (*see Siddle I* Docket No. 395, Ex. 2, at pp. 24-62), and billed $459.84 in fees and expenses for its defense of the Pharos Defendants in *Siddle II*, reflecting 1.5 hours of work (*Siddle II* Docket No. 274, Ex. 2, at pp. 10-11).[24]  The Leader Bulso invoices appropriately reflect work performed between March 2009, when *Siddle I* was transferred to this court, and October 2010, when Crants III and the Pharos Defendants filed a joint brief in the Sixth Circuit opposing the Siddles' appeal.

The vast majority of the Leader Bulso billing entries correspond to work performed by attorney Julie Burnstein at a rate of $300 per hour.  Attorney William Leader also performed several hours of work across the two cases at $380 per hour and attorney Steven Nieters performed 0.5 hours of work in *Siddle I* at $250 per hour.  The Siddles and Bruce Carr have not specifically challenged the reasonableness of these rates.  As discussed above, these rates are within the range of reasonable rates customarily charged by attorneys handling complex claims within this jurisdiction.

The Siddles and Bruce Carr do not specifically address the reasonableness of the time spent by Leader Bulso in either case.  The billing records indicate that, in *Siddle I*, Leader Bulso reviewed motion papers and court orders, prepared case management orders, appeared at the

------

[24]It appears that Leader Bulso charged the bulk of the fees it incurred in defending the cases to Crants III in *Siddle I*.  For example, Leader Bulso charged all fees and expenses associated with opposing the Siddles' appeal to Crants III.

40

initial case management conference, reviewed discovery correspondence, provided advice concerning discovery disputes, and reviewed the appellate papers. The court finds that it was reasonable for Leader Bulso to perform these tasks and that Leader Bulso spent a reasonable amount of time performing them. The court also finds that expenses charged by Leader Bulso, which the Siddles and Bruce Carr have not challenged, were reasonable.

Therefore, relative to Leader Bulso, the court will award a total of $14,731.75 in favor of Crants III and the Pharos Defendants across both cases.

### 3. Third-Party Vendor Charges

In *Siddle I*, Crants III incurred $21,667.19 in charges from third-party vendors for copying and printing charges. (*Siddle I* Docket No. 395, Supp. Gardner Decl. ¶ 25 and Ex. 3.) In *Siddle II*, the Pharos Defendants incurred $193.12 in third-party vendor charges for similar services. (*Siddle II* Docket No. 274, Supp. Gardner Decl. ¶ 15 and Ex. 3) The Siddles and Bruce Carr have not objected to the assessment of these expenses, which the court finds to be reasonable. Therefore, the court will award the requested $21,667.19 in third-party expenses in favor of Crants III in *Siddle I* and $193.12 in third-party expenses in favor of the Pharos Defendants in *Siddle II*.

### 4. Bickel & Brewer

#### a. Overview

Crants III seeks a total of $1,155,210.81 for charges incurred relative to Bickel & Brewer in *Siddle I*, including $902,663 in fees and $252,547.81 in expenses. (*See Siddle I* Docket No. 395, Gardner Decl. ¶ 2.)[25] The *Siddle I* Bickel & Brewer invoices reflect work performed on

_____

[25]The Gardner Declaration states that Bickel & Brewer demands $1,155,566.86. However, adding the breakout of fees and expenses stated in that declaration (*see* ¶ 15) totals

41

behalf of Crants III from October 2008 (when *Siddle I* was filed) through January 2012 (the month before Crants III filed his Rule 54 Motion). (*Id.*, Exs. 1A and 1B.) It appears that all charges associated with defending Crants III and the Pharos Defendants on appeal were billed to Crants III. Sixteen professionals at Bickel & Brewer billed time in *Siddle I,* including nine attorneys, five consultants, and two investigators, although approximately 80% of the time was billed by four attorneys: William Brewer, III, Michael S. Gardner, Eric Haas, and Anand Sambhwani. (*Id.* ¶ 14.)

Between October 2008 and March 31, 2009, Bickel & Brewer charged $850 per hour for Brewer, III, $575 per hour for Gardner, $425 per hour for Eric Haas, $275 per hour for Sambhwani, and between $250 to $575 for time billed by several "non-lawyers."[26] (*Id.*, Exs. 1A and 1B.) However, from April 1, 2009 forward, Bickel & Brewer halved all of the fees charged, applying a 50% "professional adjustment." (*See, e,g.*, *id.*, Ex. 1A a p. 84.) Also, before submitting the monthly bills to Crants III, Mr. Gardner and Mr. Brewer reviewed the invoices for additional "cuts" based on the tasks that had been performed, resulting in reductions of approximately $115,000 that were not billed to the client. (*Id.*)

In *Siddle II*, Bickel & Brewer charged the Pharos Defendants $127,584.02 in fees and expenses.[27] (*Siddle II* Docket No. 274 ¶ 12.) The invoices reflect work performed between May 19, 2009 (when *Siddle II* was filed) and June 30, 2010 (shortly before the Pharos Defendants

_____

$1,155,*210.81.* The court will assume that the lower of these two figures is correct.

[26]It is not clear from the record what professional role each of these "non-lawyers" performed. At any rate, neither the Siddles nor Bruce Carr have specifically addressed the rates charged by these non-lawyers.

[27]Unlike his affidavit on behalf of Crants III in *Siddle I*, the Gardner *Siddle II* Affidavit does not break out the allocation of fees and expenses within this total figure.

42

filed their Motion for Fees under Rule 54(d)).  All of the fees charged by Bickel & Brewer to the Pharos Defendants in *Siddle II* were subject to the same 50% "professional adjustment" noted above.

Unlike the remaining charges at issue in the pending motions, Bruce Carr has objected to the reasonableness of the rates and the total fees charged by Bickel & Brewer.  He points out that Bickel & Brewer seeks more total fees and expenses than all of the other defendants combined and complains that the rates charged and hours spent by Bickel & Brewer are "unexplainably higher than all of the other Defendants."  (*Siddle I* Docket No. 455 at pp. 14-15.)  He also objects that billing entries stating "[p]ursue various matters" are vague.  (*Id.* at p. 15.)

In their joint Reply brief, Crants III and Pharos Defendants argue that the higher total fees Bickel & Brewer charged were reasonable because of the lead role that Crants III and the Pharos Defendants played in both cases.  They also argue that the rates charged were acceptable because the effective hourly rate (*i.e.*, the blended rate) charged by the four primary attorneys was $256 per hour in *Siddle I* and $231 in *Siddle II*.  However, the joint Reply brief does not address the Siddles' argument that billing entries stating "pursue various matters" were vague.

### b.     Adjustment to Rates Charged

With respect to the rates charged, Bickel & Brewer has not explained why it applied a 50% professional adjustment to its fees beginning April 1, 2009.  Indeed, the "full rates" either exceed or would be at the high end of rates charged by major law firms in Nashville as recorded in the 2008 and 2009 National Law Journal excerpts relied upon in the Gardner Affidavits.

The court finds that the effective rates charged by Bickel & Brewer in both cases from April 1, 2009 forward (*e.g.*, Brewer at $425 per hour, Gardner at $262.50 per hour, Sambhwani

43

at $137.50 per hour) fall within the range of rates charged for work by comparably experienced law firms in complex cases in this jurisdiction, and are therefore reasonable. The court also finds that the full rates charged before April 1, 2009 were reasonable except as to Brewer, who charged $850 per hour. Therefore, for purposes of the fee award, the court will reduce Brewer's rate to $575, reflecting the same rate charged by Gardner. Subject to this reduction, the court finds the unadjusted rates charged by Bickel & Brewer before April 1, 2009 reasonable.

c.      Adjustment for Vague Entries

A number of the billing entries by attorneys Brewer and Gardner in both cases simply state "pursue various matters" , "pursue matters re complaint," "pursue matters re discovery," or similarly vague language to that effect, often corresponding to significant blocks of time. (*See, e.g.*, *Siddle I* Docket No. 395, Ex. 1A, p. 3 (Brewer 10/2/08 entry: "Pursue various pretrial matters - 0.5"; Gardner entry: "Pursue matters re complaint - 6.00"), and p. 47 (Gardner 2/3/09 entry: "Pursue matters re motion to dismiss - 3.30").) The court agrees that these entries are vague and that a substantial reduction is warranted with respect to them. Therefore, the court will disallow 50% of the charges attributable to these vague entries.

In *Siddle I*, the court calculates that 50.5 hours of time billed by Brewer and 186 hours billed by Gardner correspond to vague entries. Accounting for the rate reduction relative to Brewer's charges before April 1, 2009, the court will disallow $19,881.25 relative to Brewer and $53,475 relative to Gardner,[28] for a total reduction of $72,746.25. In *Siddle II*, the court

---

[28]Brewer billed 24.4 hours in unadjusted time before April 1, 2009, all of which correspond to vague time entries. Applying a rate of $575 per hour and disallowing half of this time (*i.e.*, allowing 12.2 hours at $575 per hour) thereby reduces the fee award for that period by $13,725. The court calculates that, after April 1, 2009, Brewer billed 26.1 hours of vague time entries that were originally subject to the 50% "professional adjustment," for a total of $11,092.50 in adjusted charges. Disallowing half of these charges reduces the fee award by

44

calculates that $5,848.75 of the charges attributable to Brewer and Gardner correspond to vague entries. Therefore, the court will reduce the fee award in *Siddle II* by $2.924.38.

Subject to these qualifications, the court finds that the total fees and expenses charged were otherwise reasonable and finds no other reason to deduct from the actual invoiced amounts. Crants III, to whom most of the charges at issue were allocated, was a key defendant in *Siddle I*: he was the subject of fifteen causes of action, including complicated RICO and securities fraud claims. He also took the lead in filing multiple sophisticated motions, including a successful Motion to Dismiss or Transfer before the transferor court, multiple motions to dismiss following transfer, and a successful Motion for Summary Judgment that paved the way for the remaining defendants to obtain summary judgment as well.

With respect to the Motion for Summary Judgment, Crants III (along with, to a lesser degree, Crants Jr.) bore the brunt of responding to the Siddles' voluminous summary judgment opposition. This included (1) justifiably filing a Motion to Strike the Siddle Affidavit (*Siddle I* Docket No. 272) for violating the Federal Rules of Civil Procedure and the Federal Rules of Evidence, (2) responding to the voluminous evidentiary materials and the argumentative (and largely unsupported) "statement of facts" filed in support of the Siddles' opposition brief; and (3) addressing the myriad of misrepresentations and mischaracterizations contained in the Siddles' opposition brief. Thus, prior to appeal, Crants III required robust representation from Bickel & Brewer in analyzing the claims against him, moving to dismiss the released claims,

---

$5,546.25. Therefore, relative to Brewer, the court will reduce the fees demanded by $19,271.25. With respect to Gardner, whose rates the court finds were reasonable even prior to April 1, 2009, the court will disallow half of the time billed for vague entries, resulting in a downward reduction of $53,475 (*i.e.*, (186 hours ÷ 2) X $575 per hour).

responding to broad discovery requests, moving for summary judgment, and clarifying the evidentiary record to correct the Siddles' misrepresentations and mischaracterizations.

Crants III also played a leading role in seeking to uphold this court's grant of summary judgment on appeal, with respect to which his counsel filed an extensive opposition brief and participated in oral argument before the Sixth Circuit. In sum, as a key defendant from whom $100 million in damages was sought, it is understandable that Crants III mounted a vigorous defense in a complex case that the Siddles refused to abandon at any stage. Thus, subject to the reductions noted above, the court finds that the time spent and the total fees and expenses charged by Bickel & Brewer were appropriate in this case, notwithstanding the fact that they were substantially higher than those of the other defendants.

Many of the same factors justify the significant legal fees that the Pharos Defendants incurred in defending themselves in *Siddle II*. In addition, in *Siddle II*, the Siddles (1) again filed in the wrong jurisdiction, despite Judge Murphy's previous orders transferring *Siddle I* and *HSC* pursuant to the forum selection clause contained in the Releases, and (2) continued to press their claims against the Pharos Defendants even after this court found that the Releases were enforceable, thereby driving up the legal fees incurred by the Pharos Defendants.

Based on these findings, the court calculates the fee award relative to Bickel & Brewer in each case as follows:

- Crants III/*Siddle I*: $829,916.75 in allowable fees + $252,547.81 in expenses = $1,082,464.56 in allowable fees and expenses.

- Pharos Defendants/*Siddle II*: $124,659.64 in allowable fees and expenses.

   5.     Summary: Total awards in favor Crants III and the Pharos Defendants

In *Siddle I*, Crants is entitled to $6,843.60 relative to Gallop Johnson, $14,271.91 relative

to Leader Bulso, $1,082,464.56 relative to Bickel & Brewer, and $21,667.19 in third-party vendor expenses, for a total of $1,125,247.26. In *Siddle II*, the Pharos Defendants are entitled to $6,928.54 relative to Gallop Johnson, $459.84 relative to Leader Bulso, $124,659.64 relative to Bickel & Brewer, and $193.12 in third-party vendor expenses, for a total of $132,241.14.

### F.     Crants Fee Application

Crants (*Siddle I*) and Connectgov (*Siddle II*) were both represented by the same Nashville law firm, Riley Warnock & Jacobson, PLC ("RWC"), following transfer of each case to this court.[29]

RWC billed Crants a total of $226,029.50 in fees and $1,998.34 in expenses. (Docket No. 388, Supp. Riley Decl. ¶¶ 6 and 8.) RWC billed attorney Steven A. Riley's time at $550 per hour, attorney James Bowen's time at $300 per hour, attorney Seth McInteer at $190 per hour, and paralegal DeDe Gibby at approximately $100 per hour. (*Id.* ¶ 4 and Ex. A.) RWC discounted its aggregate fees by $1,500 and $4,500 in May and June 2009. (¶ 4.) Riley billed 81.95 hours of work ($44,797.50), Bowen billed 456.49 hours of work ($137,147.00), McInteer billed 257.6 hours of work ($48,545.00), and Gibby billed 14.1 hours of work ($1,540.00). (*Id.* ¶ 7.) Riley oversaw case strategy, reviewed and revised pleadings, and communicated with counsel for the Siddles and the defendants; Bowen took a lead role, reviewing documents produced by Siddles and the defendants, drafting the Crants' Motion for Summary Judgment and other filings, addressing discovery disputes, and engaging in day-to-day case management; McInteer performed legal research, conducted document review, and drafted various filings in

---

[29]Although Crants and Connectgov were represented by Illinois local counsel in each before transfer, Crants and Connectgov have not requested fees for pre-transfer work performed on their behalf.

the case.  (*Id.*)

Neither the Siddles nor Bruce Carr has specifically objected to the rates charged by RWC.  Indeed, the rates charged by RWC are within the reasonable range of rates charged by attorneys within this jurisdiction on complex cases and, particularly in the absence of a specific objection, the court finds those rates reasonable in the context of this litigation.

The Siddles and Bruce Carr have not specifically addressed the reasonableness of the work performed by RWC.  The invoices reflect work performed by RWC between February 2009 (when *Siddle I* was transferred to this court) through November 2011, the month in which the Sixth Circuit heard oral argument concerning the Siddles' appeal.  Crants played a key role in *Siddle I*, in which he filed a Motion to Dismiss based on improper venue, a Motion to Dismiss the Siddles' complaint based on the Releases (which the Siddles only defeated by arguing a contract defense that proved to be without merit), and a successful Motion for Summary Judgment that, along with Crants III's motion, paved the way for the remaining defendants to receive summary judgment in their favor as well.  Crants also filed a successful brief in opposition to the Siddles' appeal.

Under the circumstances, the court finds that the time spent by RWC was reasonable and does not require any adjustment from the invoiced amounts.  Also, the court finds that expenses charged by RWC, which the Siddles and Bruce Carr have not challenged, were reasonable.  Therefore, the court will award $228,027.84 in attorney's fees and expenses in favor of Crants.

RWC represented Connectgov in *Siddle II*, in which it invoiced ConnectGov for $47,890.50 in fees and $284.28 in expenses.  Riley billed 7.35 hours, Bowen 103.35 hours, McInteer 66.9 hours, and Gibby 1.2 hours, at the same rates and for substantially the same types

48

of tasks as in *Siddle I*.  The Siddles and Bruce Carr have not specifically objected to the reasonableness of the time spent or the rates charged by RWC on behalf of Connectgov.  RWC successfully moved to transfer the case to this district and obtained summary judgment for Connectgov in a complex case involving multiple causes of action and substantial monetary damages demands.

Under the circumstances, the court finds that the time spent by RWC in defending Connectgov was reasonable.  The court also finds that the expenses charged, which the Siddles and Bruce Carr have not challenged, were reasonable.  Therefore, the court will award $48,174.78 in fees and expenses in favor of ConnectGov.

### G.    Summary of Fees and Expenses

In sum, the court finds the reasonable fees and expenses relative to particular defendants are as follows:

- Cooper: $13,164.32 in *Siddle I*.

- Crawford and GSRM:  $286,251.88 across both cases.

- Oaks and LBMC: $326,630.82 across both cases.

- ConnectGov: $48,174.78 in *Siddle II*.

- Crants: $228,027.84 in *Siddle I*.

- Crants and the Pharos Defendants: $1,257,488.40 across the two cases, including $1,125,247.26 in *Siddle I* and $132,241.14 in *Siddle II*.

In sum, the Siddles are jointly and severally liable for $2,159,738.04.

## III.   Motions for Sanctions Under 28 U.S.C. § 1927

In addition to their demands for fees and expenses from the Siddles directly under the Releases (via Rule 54), the defendants have demanded the full value of their attorney's fees and

49

expenses as a sanction against one or more of the Siddles' former attorneys in each case. As the court construes the motions, the defendants do not seek to "double-recover" their fees; instead, they demand that the Siddles' former counsel be held jointly and severally liable with the Siddles for all of the allowable fees and expenses. *See Royal Oak Ent't, L.L.C. v. City of Royal Oak*, 316 F. App'x 482, 486, 487-88 (6th Cir. 2009) (affirming district court order holding attorney jointly and severally liable with plaintiffs for prevailing defendants' attorneys fees).

### A. Attorneys Subject to the Defendants' Sanctions Motions

As an initial matter, the defendants do not all demand sanctions from the same attorneys. After the defendants initially filed sanctions motions that referred to "plaintiffs' counsel," without distinguishing between lead counsel (Bruce Carr and/or Rex Carr) and local counsel (Mary Parker) in each case, Mary Parker responded by arguing that (1) the motions appeared to relate only to conduct by Bruce Carr and/or Rex Carr; and (2) to the extent the defendants sought sanctions against Ms. Parker, they had failed to identify any conduct by her that would merit sanctions under § 1927.

Thereafter, Crants (*Siddle I*), Connectgov (*Siddle II*), Crants III (*Siddle I*), and the Pharos Defendants (*Siddle II*) clarified that they each seek awards against Bruce Carr and Rex Carr only, but not Mary Parker. However, Crawford clarified that he demands fees from Bruce Carr, Rex Carr, *and* Mary Parker, on the basis that she is also liable as "counsel of record" in both cases. Oaks and Cooper, who had simply demanded fees from "plaintiffs' counsel" without distinction in their original motion, did not respond to Parker's position.[30] However, the conduct

---

[30]Although no defendant expressly argued that the Rex Carr Law Firm could be held liable, the Rex Carr Law Firm (via Rex Carr) filed a Response arguing, correctly, that law firms cannot be held liable under § 1927. *See BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d

described in Oaks' and Cooper's respective motions relates to conduct by Bruce Carr and/or Rex Carr, not Parker.  Therefore, as the court construes defendants' submissions, only Crawford expressly seeks sanctions against Parker (in addition to Bruce Carr and/or Rex Carr), while the remaining motions seek sanctions against Bruce Carr and Rex Carr only.

## B. Legal Standard

42 U.S.C. §1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 sanctions are warranted when an attorney objectively "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party."  *Red Carpet Studios Div. of Source Advantage, Ltd.*, 465 F.3d 642, 646 (6th Cir. 2006) (quoting *Ruben v. Warren City Sch.*, 825 F.2d 977, 984 (6th Cir. 1987)).  The purpose is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy.  *Red Carpet*, 465 F.3d at 646 (citing *Jones v. Continental Corp.*, 789 F.2d 1225, 1230-31 (6th Cir. 1986)).  A sanctioned attorney is required to satisfy the excess costs attributable to his misconduct.  *Red Carpet*, 465 F.3d at 646 (citing *In re Ruben*, 825 F.2d 977, 983 (6th Cir. 1987)).

Unlike sanctions imposed under a court's inherent authority, § 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or

---

742,751 (6th Cir. 2010) ("[§ 1927] does not authorize the imposition of sanctions on law firms").  At any rate, the court construes the defendants as seeking fees against the Siddles' individual former attorneys, not the Rex Carr Law Firm.  Therefore, the court need not "deny in part" the sanctions motions in that respect.

incompetence. *Red Carpet*, 465 F.3d at 646. Thus, an attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings. *Id.* "There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1987) (quoting *In re Ruben*, 825 F.2d at 984).

Sanctions imposed under § 1927 are designed to punish and deter unwarranted conduct by attorneys, not to make aggrieved parties whole. *See Red Carpet*, 465 F.3d at 647. Nevertheless, the Sixth Circuit has found that awarding the prevailing party all of its reasonable attorney's fees under § 1927 can be justifiable, such as where a plaintiff's attorney brings and continues to prosecute claims that were "utterly frivolous." *See Stalley ex rel. U.S. v. Mountain States Health Alliance*, 644 F.3d 349, 351-52 (6th Cir.2011); *see also Ridder*, 109 F.3d at 288 (upholding award of attorney's fees and expenses against plaintiff's counsel under § 1927, where plaintiff's counsel engaged in "persistent assertion of meritless claims").

**C.    Appearances of Bruce Carr, Rex Carr, and Mary Parker in either or both cases.**

Bruce Carr and Rex Carr both filed *Siddle I* and participated in proceedings before the Southern District of Illinois, including opposing the various motions to dismiss or transfer the cases pursuant to the Releases and the forum selection clause. After transfer, Bruce Carr appeared *pro hac vice* in this court, but Rex Carr did not. Mary Parker appeared as local counsel on behalf of the Siddles. Thus, following transfer, Rex Carr played no further role, while Bruce Carr and Parker represented the Siddles until they withdrew as counsel after the defendants filed

52

their Motions for § 1927 Sanctions.

Bruce Carr filed *Siddle II* and appeared as counsel of record. Upon transfer, Bruce Carr appeared on behalf of the Siddles *pro hac vice*, and Parker appeared as local counsel. Rex Carr did not appear in *Siddle II* at any point.

In sum, within the relevant time frame, Bruce Carr served as counsel of record for the Siddles at all times in *Siddle I* and *Siddle II*, Rex Carr served as counsel of record only in *Siddle I* for a five-month period between the date the case was filed and the date of transfer, and Parker served as counsel for the Siddles only after the transfer of each case.

### D. The Siddles' Position: Impose all Attorney's Fees on Bruce Carr and Rex Carr

In their opposition to the defendants' Rule 54 Motions, the Siddles argue that, to the extent any fees and expenses are allowed, they should be assessed only against Bruce Carr and Rex Carr under § 1927, but not against the Siddles. (*See Siddle II* Docket No. 336 at pp 5.) In support of this position, they attach a short declaration from Bruce Siddle (*id.*, Ex. 1). In relevant part, Bruce Siddle avers that the plaintiffs retained Bruce Carr, Rex Carr, and the Rex Carr Law Firm (whom he defines as "the Carrs") as counsel in *Siddle I* and *Siddle II*. He states that the Siddles "relied upon the advice and counsel of the Carrs in handling [both cases]." He also states that "[t]he Carrs advised the Plaintiffs to pursue the Lawsuits and never advised the Plaintiffs to dismiss the Lawsuits at any time." (*Id.* ¶ 5.)

Although the court finds that sanctions are warranted against Bruce Carr and, to a much lesser degree, Rex Carr, the court will not "carve out" the value of the sanctions from the Rule 54 award. As an initial matter, for the reasons stated herein, the court will not sanction Bruce Carr and Rex Carr for the full value of the defendants' allowable fees and expenses in both

53

cases.  Regardless, the Siddles have not shown that § 1927 acts as either (a) a "defense" to

enforcement of the Releases against them under Rule 54, or (b) an indemnity provision.

Instead, in their briefing and in the related Third-Party Complaint, the Siddles essentially

contend that Bruce Carr and Rex Carr committed malpractice in both cases.  Given the paucity of

information provided by Bruce Carr, Rex Carr, and the Siddles here concerning the nature of

their attorney-client relationship, including what representations the Siddles made to their

attorneys and vice-versa, the court is not in a position to make findings concerning the internal

mechanics of that relationship, nor have the Siddles shown that the court has any obligation to do

so for purposes of Rule 54 liability.  As explained in footnote 34 *infra*, the court regards the

Siddles' allegations against the Carrs as essentially a separate malpractice claim that may be

litigated separately following this court's adjudication of the Rule 54 Motions and Motions for §

1927 Sanctions.[31]

Accordingly, the court will simply consider whether to hold the Siddles' former attorneys

---

[31]Even if the court could consider the Siddles' argument as an equitable matter, the Siddles have not established that the facts unequivocally absolve them of any wrongdoing.  As the court found in its previous summary judgment opinions, Bruce Siddle knowingly and voluntarily signed the Releases following a thorough investigation by sophisticated counsel on his behalf, he received consideration for the Releases, and he ratified the Releases through subsequent conduct in multiple respects.  Notwithstanding these facts, the Siddles brought suit against the defendants in *Siddle I* and *Siddle II*.  Furthermore, despite the forum selection clause to which the Siddles had expressly agreed in the April 6 Release, the Siddles initially sued in the wrong forum and, even after *Siddle I* was transferred, sued again in the wrong forum in *HSC* and *Siddle II*.  Bruce Siddle filed an affidavit in support of the Siddles' opposition to transfer in *Siddle I* and *Siddle II*, demonstrating that he must have had some awareness of the role of the Releases in the litigation.  Furthermore, in support of his opposition to the Motion for Summary Judgment, Bruce Siddle signed a declaration that contained various misleading statements that were inconsistent with the record.  Of course, it is possible that these steps in the litigation were the result of malpractice by Bruce Carr and/or Rex Carr.  But that is a separate case, with respect to which the court makes no express findings.

jointly and severally liable with the Siddles for some or all of the defendants' reasonable fees and expenses.

**E.  Mary Parker**

Parker had no role in filing or prosecuting the Siddles' lawsuits in *Siddle I* or *Siddle II* before transfer.  In February 2009, Rex Carr contacted J.D. Lee, a Tennessee attorney who has practiced law since 1954, to inform him that he (Rex) and his son Bruce were representing the Siddles in a lawsuit that had been transferred to Middle District of Tennessee from the Southern District of Illinois.  (*See Siddle I* Docket No. 433, Affidavit of JD Lee.)  Lee knew Rex Carr from a professional trial lawyers' association and believed him to be a reputable attorney who would only take valid cases.  (*Id.*)  Lee discussed the cases with Rex Carr and Bruce Carr, reviewed the pleadings, concluded that the cases were "valid and appropriately filed," and initially offered to serve as local counsel.  (*Id.* at ¶ 5.)  However, Lee determined that, because he was located in East Tennessee, it would be more convenient for the Siddles to retain a Nashville-based attorney, at which point Lee contacted Parker, an attorney for whom he had served as a mentor for several years following Parker's graduation from law school.  (*Id.* ¶ 6; Docket No. 433, Ex. 8, Parker Aff. ¶ 8.)  Lee provided a positive opinion of Rex Carr and Bruce Carr to Parker and informed her that the Siddles' cases were meritorious and worth taking.  (Lee Aff. ¶ 6; Parker Aff. ¶ 6.)  Parker reviewed the operative First Amended Complaint in *Siddle I*, discussed the case at length with Rex Carr and Bruce Carr, and reviewed pertinent Tennessee law.  (Parker Aff. ¶ 8.)  Rex Carr and Bruce Carr assured her of the high quality of the Siddles' case, assured her that Bruce Carr had experience with RICO cases, and agreed that Parker's role would be limited to advising on local rules, local practice, and Tennessee law, while Bruce Carr

55

would handle all substantive aspects of the case. (*Id.* ¶¶ 7-8.)

Parker met with "Mr. Carr" (presumably Bruce Carr) at her office on March 4, 2009, during which meeting Bruce Carr explained the case and represented that he had been working on it for two or three years by that point. (*Id.* ¶ 9.) Although Parker was supposed to meet with Bruce Siddle shortly after Parker entered her appearance in the case, medical issues with Bruce Siddle and his wife prevented them from meeting for an interview before the first status conference before this court in *Siddle I* on June 1, 2009. (*Id.* ¶ 10.) During the remainder of the cases, Parker had limited contact with the Siddles, due to (1) a variety of medical ailments suffered by the Siddles; (2) Parker's own medical ailments, which included multiple eye surgeries and the death of a close family member; and (3) Bruce Carr's physical proximity to the Siddles and his assumption of essentially all substantive matters in both cases.

At various points in the litigation, counsel for the defendants did not include Parker on emails and conference calls, meaning that she was unaware of certain case-related disputes until after the fact. (*Id.* ¶ 13.) In an effort to alleviate some of the mounting discovery disputes between the Siddles and the defendants, Parker attempted to act as a point person on discovery issues and to keep Bruce Carr apprised of the local rules and the necessary decorum for attorneys practicing in this jurisdiction. (*Id.* ¶¶ 14-16.) Parker did not take any depositions in the case. (*Id.*) Emails attached to Parker's affidavit reflect Parker's representation that she maintained a good relationship with counsel for the defendants and made good faith efforts to work through discovery disputes. Although Parker phrases the issue delicately in her affidavit, it appears that Parker's role eventually amounted to policing Bruce Carr's refusal to obey the federal and local rules or to honor his clients' discovery obligations. (*See, e.g.*, *id.* ¶ 17.)

56

In May 2009, Parker had eye surgery on her left eye and was out of the office for a month. At that point, she hired a recent law school graduate, Matthew Claiborne, to work exclusively on the cases at her own expense. Just after Crants file the first Motion for Summary Judgment in *Siddle I* on September 30, 2009, Parker's mother became gravely ill and Parker was away from the office for the next five weeks. Just after returning to Nashville in November 2009, Parker had eye surgery on her other eye, keeping her out of the office for over a month and leaving her with limited ability to read for a significant amount of time thereafter. As a result of these various issues, Parker played no role in responding to the summary judgment motion, did not participate in filing it, and physically could not have read it even if she had seen it (*Id.* ¶ 20.) When Crants and Crants III were granted summary judgment, Parker attempted to broker an agreement that would avoid follow-on motions for summary judgment, but she "could not get a consensus from all of the attorneys." (*Id.* ¶ 21.) After Bruce Carr filed the unsuccessful motion to certify the initial summary judgment order for appeal under Rule 54, Parker performed no additional work on the case. (*Id.*)

At an unspecified point in mid-2009, Parker also hired Richard Knudsen, a former FBI Special Agent, as a consultant to assist her in investigating and developing the RICO claims, an area of law in which she had limited familiarity. (Parker Aff. ¶ 23; Knudsen Aff. ¶¶ 9-10.) Knudsen reviewed records in the case and spoke with Bruce Siddle on the phone and in person. (Knudsen Aff. ¶ 11.) Based on the records and his interviews of Bruce Siddle, Knudsen believed that Bruce Siddle was a "credible party" and that the allegations of fraud and duress in obtaining the Releases appeared to be valid and substantiated. (*Id.* ¶¶ 14-15.) Parker maintains that, based on her conversations with J.D. Lee, her conversations with Rex Carr and Bruce Carr, her review

of documentary evidence, her discussions with Bruce Siddle, her own legal research, reports from Mr. Claiborne's review of the documents, and her discussions with former Special Agent Knudsen, she "absolutely and unequivocally had a good faith belief, based upon careful and competent legal work, that Plaintiffs' claims were meritorious." (Parker Aff. ¶ 25.)

Parker received no fees for her work on the cases. (*Id.* ¶ 26.) No defense attorney in the case served or threatened to serve her with a Rule 11 letter, suggested that the case was frivolous and that she should remove herself from it, or told her that she was not cooperating in good faith. (*Id.* ¶ 30.)

In response to this compelling account from Parker, Crawford provides no competing evidence and simply states that, "respectfully, Ms. Parker is attorney of record for Plaintiffs and did not seek to withdraw at any time until after the motions for attorney's fees were filed." (Docket No. 459, Reply Brief, at p. 2.) This argument is conclusory, cites no specific actions by Parker that allegedly merit sanctions, fails to address the relevant evidence and associated arguments offered by Parker, and is not supported by any case law authority. To the contrary, the uncontroverted testimony from Parker, attorney Lee, and former Special Agent Knudsen establish that Parker had no role in filing the cases and, upon reasonable inquiry and investigation, reasonably believed that the Siddles' causes of action were meritorious when the cases were transferred. She played no role in opposing either round of summary judgment motions and, in part due to medical issues, played no role or only a minor role during significant portions of the relevant time period. Furthermore, it appears that, if anything, Parker sought to resolve discovery disputes, to maintain appropriate relationships with opposing counsel, and to otherwise move the case along in as efficient a manner as possible under the circumstances.

Based on the undisputed record, it is not a close question: sanctions against Parker under § 1927 are not warranted here.

**F.      Rex Carr and Bruce Carr**

The defendants argue that Rex Carr and Bruce Carr should be sanctioned in both cases for the value of the entire fee award.

As an initial matter, Rex Carr never appeared in *Siddle II*, and the defendants have not identified any conduct by Rex Carr in *Siddle II* that could otherwise warrant sanctions. Therefore, the court finds that no sanctions are warranted against Rex Carr in *Siddle II*.  The court will consider whether Rex Carr should be sanctioned in *Siddle I* for his participation in the case before transfer.

The initial question for the court is whether Bruce Carr and Rex Carr should have refrained from filing the lawsuit on behalf of the Siddles in the first place.  Following discovery, the court found that the Siddles had not shown that the Releases were "fraudulent", procured under duress, or unenforceable for lack of consideration.  Nevertheless, it is not self-evident to the court that, at least when they initially filed *Siddle I* in October 2008 in the Illinois district court, Bruce Carr and Rex Carr knew or should have known that the Siddles' contract defenses were without merit.  In connection with multiple filings in this court, Bruce Siddle submitted sworn declarations in which he averred "facts" that ultimately were inconsistent with the evidentiary record.  Furthermore, as Parker averred, Knudsen, a former FBI agent, questioned Bruce Siddle and investigated the claims, concluding that Siddle seemed to be a credible person and that his contract defenses to the Releases may have had merit.  Thus, it may be that Bruce Carr and Rex Carr relied on Bruce Siddle's representations in bringing the case, believing that

the Siddles had viable defenses to the Releases.  Although the court makes no findings of fact as to what Bruce Carr and Rex Carr subjectively knew when they brought the case – an issue on which the record before the court is not sufficiently developed for purposes of § 1927 sanctions – there is sufficient evidence in the record to establish that there may have been a reasonable basis to bring *Siddle I*.  Thus, the court will not sanction Bruce Carr and Rex Carr simply for filing *Siddle I*.

However, Bruce Carr and Rex Carr should have known that it was inappropriate to file *Siddle I* in the Southern District of Illinois.  The April 6 Release contained a forum selection clause under which the parties were obligated to assert any challenges to enforcement of that agreement in Nashville.  Under binding Seventh Circuit precedent in *American Patriot*, the Southern District of Illinois district court was obligated to enforce the forum selection clause.  Even after the defendants in *Siddle I* argued that *American Patriot* compelled dismissal or transfer of the case, Bruce Carr and Rex Carr refused to concede, spawning a series of briefing and oral argument before the Southern District of Illinois district court.  Not surprisingly, this culminated in Judge Murphy transferring *Siddle I* to this district.

Here, neither Bruce Carr nor Rex Carr have even addressed, let alone attempted to justify, their decision to file *Siddle I* in Illinois (and to fight the motions to dismiss or transfer) in spite of the forum selection clause.  Their conduct needlessly caused the defendants to retain local counsel (thereby incurring the fees and expenses attendant to litigating the early stages of the case) and to incur attorney's fees and expenses to have the case transferred to the district in which it should have been brought in the first place.  Therefore, the court finds that sanctions are warranted from the date of filing *Siddle I* to the date of transfer.

60

In determining the amount of pre-transfer sanctions to award against Bruce Carr and Rex Carr in *Siddle I*, the court must examine costs the defendants incurred, if any, as a result of *Siddle I* being filed in Illinois rather than in this court. Crawford and Crants have not submitted invoices reflecting any attorney's fees or expenses incurred before transfer in *Siddle I*. Therefore, no sanctions will issue in their favor in this regard. Crants III incurred $6,843.60 in fees and expenses from local counsel Gallop Johnson in Illinois and incurred substantial additional fees and expenses from lead counsel Bickel & Brewer before transfer. Oaks incurred $31,654.77 in allowable charges from Illinois local counsel Hinshaw & Culbertson before transfer. Cooper incurred $3,230 in charges before transfer, including significant travel expenses from her Tennessee-based counsel. The invoices charged to both defendants reflect a mix of work by their counsel, some of which likely would have been incurred regardless of the forum.

Under the circumstances, the court will hold Rex Carr and Bruce Carr jointly and severally liable with the Siddles in *Siddle I* for $15,000 of the charges incurred by Oaks before transfer, $15,000 of the charges incurred by Crants III before transfer, and $1,500 of the charges incurred by Cooper before transfer. Although these figures may underestimate the fees and expenses that the Oaks and Crants III actually incurred as a result of filing in the wrong forum, Oaks, Crants III and Cooper have not itemized the costs attributable to the improper venue issue and, at any rate, the court views the $31,500 combined sanction as reasonable and sufficient to punish Bruce Carr and Rex Carr for their conduct, thereby effectuating the purposes of § 1927.

Following transfer of *Siddle I*, the Siddles, represented by Bruce Carr, filed *Siddle II* in the Southern District of Illinois, which again caused the defendants in those cases to incur significant fees and expenses to have the case transferred. Bruce Carr plainly should not have

61

filed the lawsuit in Illinois after Judge Murphy had *twice* enforced the forum selection clause in the Releases in *Siddle I* and the *HSC* lawsuit. Furthermore, *Siddle II* involved claims that likely should have been brought as part of *Siddle I* (if at all), such as claims against Oaks' accounting firm (in additional to Oaks himself) and against Crawford's law firm (in addition to Crawford himself). Thus, the court views Bruce Carr's role in filing *Siddle II* in the wrong venue as particularly vexatious.

Furthermore, after transfer of both cases, Bruce Carr needlessly multiplied the proceedings in several respects. First, he propounded broad and unfocused discovery on behalf of the Siddles and refused to focus that discovery in any meaningful fashion. Furthermore, at least as to some defendants, the discovery requests were largely irrelevant to the threshold issue of the enforceability of the Releases. For example, after serving 100 requests for admissions on Crawford, serving 100 interrogatories on Crawford, and receiving 15,000 pages of documents from Crawford, Bruce Carr's summary judgment briefing did not rely on any of this discovery.

Bruce Carr also flagrantly violated the federal rules and this court's local rules by filing the Siddle Declaration in support of the Siddles' opposition to the Crants and Crants III's motion for summary judgment. That declaration purported to be a "statement of undisputed facts," but amounted to a run-on repetition of the complaint allegations and various other speculative matters of which Bruce Siddle had no personal knowledge. Moreover, many of these "facts" did not contain adequate source information and were inconsistent with (or at least mischaracterized) substantial facts in the record. Crants and Crants III incurred substantial additional fees and expenses addressing this declaration and the "facts" contained therein.

After this court granted summary judgment to Crants and Crants III in *Siddle I* on the

basis that the Releases were enforceable and barred the claims, Bruce Carr nevertheless permitted the Siddles to continue to press their claims against the remaining defendants in both cases.  He opposed the follow-on motions for summary judgment by (1) reasserting legal arguments that the court had squarely rejected; (2) re-introducing voluminous exhibits and materials that the court had already considered (including the non-compliant Siddle Declaration); and (3) failed to address the only remaining issue, namely whether the scope of the Releases extended to each remaining defendant.  Moreover, notwithstanding the court's findings in *Crants I*, the briefs that Bruce Carr filed in each case contained the same misrepresentations and mischaracterizations as the previous submissions.  Given that the Siddles did not contest that the *scope* of the Releases applied to the remaining defendants, Bruce Carr knew or should have known that additional submissions served no purpose other than to protract both cases before appeal.  Thus, for the second time in these cases, he essentially ignored the precedential effect of a court order.

The record before the court also demonstrates that, at least at times, Bruce Carr refused to provide meaningful discovery to the defendants.  For example, in violation of Rule 26, Bruce Carr filed Rule 26 disclosures that simply listed 145 individuals without identifying the subjects of their knowledge, that failed to compute the plaintiffs' damages, and that identified thousands of pages of documents without indicating their potential relevance to any particular defendant. With respect to discovery of the Siddles by Oaks designed to ascertain the basis for the Siddles' claims against him, Bruce Carr served discovery responses that were either evasive or that contained no response at all.

Furthermore, in multiple submissions, Bruce Carr asserted hyperbolic and

63

unsubstantiated claims that the defendants had committed perjury in their submissions to the court. These serious charges, for which Bruce Carr did not have a reasonable factual premise, exceeded the reasonable bounds of zealous advocacy and caused several defendants to incur additional fees to clarify the record in multiple responsive submissions.

However, with respect to fees incurred on appeal, the court finds that sanctions under § 1927 are not warranted. The Sixth Circuit has authority under § 1927, 28 U.S.C. § 1912, and Fed. R. App. P. 38 to sanction attorneys for conduct on appeal, including the filing of frivolous appeals, either upon motion or acting *sua sponte*. *Webster v. Sowders*, 846 F.2d 1032, 1040 (6th Cir. 1988). The Sixth Circuit has cautioned that "the sanction statutes, the rules, and the case law provide for fairly clear separation between conduct on appeal sanctionable by the appellate court and conduct in the trial court sanctionable by the trial court." *Id.* (stating that, before appeal, trial court should not have threatened losing party with sanctions for taking an appeal); *see also Conner v. Travis Cnty.*, 209 F.3d 794, 801 (5th Cir. 2000) (reversing district court award of sanctions under § 1927 and court's inherent powers, because district court "sanctions on the basis of a frivolous appeal are improper"). Here, the defendants did not demand their appellate fees under § 1927 in their submissions to Sixth Circuit, the Sixth Circuit did not award fees *sua sponte*, and the Sixth Circuit ruling on appeal did not state that the appeal was frivolous or otherwise filed vexatiously. Under these circumstances, this court will deny the defendants' demand for sanctions relative to the appeal.

Therefore, in addition to the shared sanctions with Rex Carr, the court will impose additional sanctions on Bruce Carr that punish him for his other vexatious conduct in both cases and that hopefully will deter future attorneys from undertaking similar tactics. The defendants

64

have not identified the costs specifically attributable to the aforementioned acts of sanctionable misconduct by Bruce Carr. Furthermore, based on the court's review of the billing invoices, it appears that the defendants incurred varying amounts of fees as a result of Bruce Carr's sanctionable conduct in both cases. Thus, the court will assess sanctions specific to each defendant that, in the aggregate, accomplish the punitive and deterrent purposes of § 1927, without exceeding (and perhaps underestimating) the actual fees and expenses those actions imposed on the defendants.

Based on its analysis of the fees and expenses incurred by each defendant after transfer of *Siddle I* (including fees incurred from the date of filing *Siddle II* forward), the court will hold Bruce Carr jointly and severally liable with the Siddles for the following sums in both cases:

- Oaks and LBMC: The court will sanction Bruce Carr $75,000, reflecting a substantial proportion of the allowable fees and expenses that Oaks and LBMC incurred after transfer, excluding appellate fees. Oaks and LBMC's submissions demonstrate that, in addition to the issues discussed above, Bruce Carr refused to clarify the Siddles' claims against Oaks, which needlessly caused Oaks and LBMC to incur additional fees and expenses in defending Oaks. LBMC also incurred unnecessary fees before the S.D. Ill. court when Bruce Carr filed *Siddle II* in the wrong forum.

- Crawford and GSRM: The court will sanction Bruce Carr $75,000, reflecting a substantial portion of the allowable attorney's fees and expenses that Crawford and GSRM incurred after transfer, excluding appellate fees. Crawford's submissions demonstrate that, in addition to the issues discussed above, Bruce Carr needlessly drove up discovery costs on Crawford and GSRM.

- Cooper: The court will sanction Bruce Carr $1,000. Because Bruce Carr did not concede that *Crants I* precluded the claims against Cooper, Cooper incurred additional fees moving for summary judgment and reviewing the Siddles' responsive submissions.

- Crants III and the Pharos Defendants: The court will sanction Bruce Carr $100,000 in *Siddle I* and $25,000 in *Siddle II*. In addition to the issues

65

discussed above, Crants III incurred substantial fees addressing the Siddle Declaration, including filing a Motion to Strike and attempting to respond to the declaration under Local Rule 56.01. Furthermore, Bruce Carr filed *Siddle II* in the wrong forum and refused to concede that *Crants I* precluded the claims against the Pharos Defendants, thereby causing the Pharos Defendants to incur fees unnecessarily.

- Connectgov: The court will sanction Bruce Carr $30,000. Based on the billing invoices, the court finds that Connectgov incurred the bulk of its fees and expenses because (1) Bruce Carr filed *Siddle II* in an improper forum; and (2) without valid grounds to do so, Bruce Carr continued to press claims against Connectgov after *Crants I*.

- Crants: The court will sanction Bruce Carr $75,000. In addition to the issues discussed above, Crants, like Crants III, was forced to address the non-compliant Siddle Declaration and to spend significant effort clarifying the record.

In sum, the court will hold Rex Carr jointly and severally liable with the Siddles for $15,000 relative to Crants III, $15,000 relative to Oaks, and $1,500 relative to Cooper. The court will also hold Bruce Carr jointly and severally with the Siddles for: (1) $90,000 relative to Oaks and LBMC (including the $15,000 sanction for pre-transfer conduct in *Siddle I*); (2) $75,000 relative to Crawford and GSRM; (3) $2,500 relative to Cooper (including the $1,500 sanction for pre-transfer conduct in *Siddle I*); (4) $115,000 relative to Crants III (including the $15,000 sanction for pre-transfer conduct in *Siddle I*); (5) $25,000 relative to the Pharos Defendants; (5) $30,000 relative to Connectgov, and (6) $75,000 relative to Crants.[32]

Finally, the court will deny the Siddles' request for a hearing under Local Rule

---

[32]Although it does not impact the court's consideration of the pending motions in any substantive respect, the court notes that the Illinois Supreme Court recently suspended Bruce Carr for nine months pursuant to a Report and Recommendation from the Illinois Attorney Registration & Disciplinary Commission. (*See Siddle I* Docket No. 459, Ex. A.; *Siddle II* Docket No. 337 (report finding that *inter alia*, Bruce Carr knowingly filed a frivolous lawsuit and knowingly filed an invalid notice of attorney's lien for purposes of harassment).)

66

54.01(b)(3). In their motion, the Siddles request that, after determining liability for fees and costs based on the existing record, the court conduct a hearing to assess the reasonableness of the requested fees and expenses. Having determined liability for fees and expenses based on the existing record (as the Siddles requested), the court required no further information from the parties to assess the reasonableness of the fee applications. Indeed, the Siddles have had ample to opportunity to analyze and address the fee applications, some of which have been pending since before the Siddles appealed the *Crants I* and *Crants II* decisions in July 2010, and, in any case, the record before the court concerning the fee applications is already extensive. Therefore, no hearing is necessary or warranted here.

## ADDITIONAL ISSUES

After the court issued *Crants I*, Crants III filed a so-styled "Counterclaim" under Fed. R. Civ. P. 13(a), demanding attorney's fees and expenses from the Siddles under the Releases. (*Siddle I* Docket No. 299.) Pursuant to a court-ordered extension, the Siddles filed a Motion to Dismiss Crants III's Counterclaim after the court issued *Crants II*. (*Siddle I* Docket No. 354.) The court held the Motion to Dismiss in abeyance pending resolution of the Siddles' appeal to the Sixth Circuit. (*Siddle I* Docket No. 359.) The relief requested and the theory of liability articulated in the Counterclaim is redundant of the relief requested in Crants III's Rule 54 Motion, which the court is granting for the reasons set forth above. Therefore, the court will dismiss the Counterclaim as moot.[33] Because the court is dismissing the Counterclaim as moot, the court will also dismiss the Siddles' Motion to Dismiss the Counterclaim as moot.

---

[33]The court also notes that, under Fed. R. Civ. P. 13(e), Crants III should have sought leave of court to file the Counterclaim.

67

Also, the Siddles filed a Third-Party Complaint against Bruce Carr, Rex Carr, and the

Rex Carr Law Firm, purporting to demand indemnification from the Carrs against the court's

Rule 54 awards here.  (*Siddle I* Docket No. 415; *Siddle II* Docket No. 297.)  Under Fed. R. Civ.

P. 14(a)(1), the Siddles were required to obtain leave of court to file the Third-Party Complaint,

but failed to do so.  Therefore, the court will dismiss the Third-Party Complaint without

prejudice in both cases.[34]

## **CONCLUSION**

For the reasons set forth herein, the court finds as follows:

- The requests for fees from the Siddles under Rule 54 will all be granted, subject to the downward adjustments set forth herein.  To the extent any defendants seek sanctions against Parker, those requests will be denied.  The requests for sanctions against Rex Carr will be granted in part and denied in part.  The requests for sanctions against Bruce Carr will be granted in part and denied in part.

- The motions jointly filed by Oaks and LBMC pursuant to both Rule 54 and § 1927 (*Siddle I* Docket No. 344 and *Siddle II* Docket No. 264 (original motion); and *Siddle I* Docket No. 385 and *Siddle II* Docket No. 284 (supplemental motion)), will be granted in part and denied in part.  The Siddles are jointly and severally liable to Oaks and LBMC for $326,630.82.  As a sanction under § 1927, Rex Carr is jointly and

---

[34]To file a Third-Party Complaint, the Siddles must establish, *inter alia*, that they are "defending parties" against "claims" by the defendants for purposes of Rule 14, that this court has and should exercise subject matter jurisdiction over the Siddles' claims against the Carrs, and that the court has personal jurisdiction over Bruce Carr, Rex Carr, and the Rex Carr law firm.  Because the Siddles and the Carrs are non-diverse, the Siddles would need to establish that their state law indemnity claims against the Carrs satisfy 28 U.S.C. § 1367 (including the "same case and controversy" requirement of § 1367(a)).  Even if they could meet that standard, the Siddles would also need to persuade the court why it should not decline to exercise jurisdiction over the Siddles' third-party claims under § 1367(c), given that the court has already entered judgment on all of the claims over which it had original jurisdiction.  The Siddles' Third-Party Complaint essentially articulates malpractice claims against the Carrs.  Now that those claims are ripe in light of the court's rulings on the Rule 54 Motions, the circumstances suggest that the Siddles may re-file these claims as a separate lawsuit in an appropriate jurisdiction.

severally liable with the Siddles and Bruce Carr to Oaks for $15,000 of this amount in *Siddle I*, and Bruce Carr is jointly and severally liable with the Siddles to Oaks and LBMC for $90,000 of this amount in both cases.

- The motion filed by Linda Cooper pursuant to Rule 54 and § 1927 (*Siddle I* Docket No. 347) is granted in part and denied in part. The Siddles are jointly and severally liable to Cooper for $13,164.32 in *Siddle I*. As a sanction under § 1927, Bruce Carr is jointly and severally liable with the Siddles for $2,500 of this amount, and Rex Carr is jointly and severally liable with the Siddles and Bruce Carr for $1,500 of this amount.

- The motions filed by Crawford and GSRM pursuant to Rule 54 and § 1927 (*Siddle I* Docket No. 345 and *Siddle II* Docket No. 265 (original motion); *Siddle I* Docket No. 386 and *Siddle II* Docket No. 285 (supplemental motion)) will be granted in part and denied in part. The Siddles are jointly and severally liable to Crawford and GSRM for $286,251.88. As a sanction under § 1927, Bruce Carr will be jointly and severally liable with the Siddles to Crawford and GSRM for $75,000 of this amount. No sanctions against Rex Carr or Parker will be awarded under § 1927 relative to Crawford and GSRM.

- The Rule 54 Motion filed by Crants (*Siddle I* Docket Nos. 342 and 387) will be granted. The Rule 54 Motion filed by Connectgov (*Siddle I* Docket Nos. 262 and 286 (supplemental)) will be granted. The Motion for § 1927 Sanctions jointly filed by Crants and Connectgov (*Siddle I* Docket No. 441; *Siddle II* Docket No. 320) will be granted in part and denied in part. The Siddles are jointly and severally liable to Crants for $228,027.84. As a sanction under § 1927, Bruce Carr is jointly and severally liable with the Siddles for $75,000 of this amount. The Siddles are also jointly and severally liable to Connectgov for $48,174.78. As a sanction under § 1927, Bruce Carr is jointly and severally liable with the Siddles for $30,000 of this amount. No sanctions will be awarded against Rex Carr or Parker under § 1927 relative to Crants or Connectgov.

- The Rule 54 Motion filed by Crants III (*Siddle I* Docket No. 393) will be granted. The Rule 54 Motion filed by the Pharos Defendants (*Siddle II* Docket No. 272) will be granted. The Motion for § 1927 Sanctions jointly filed by the Pharos Defendants and Crants III (*Siddle I* Docket No. 435; *Siddle II* Docket No. 312) will be granted in part and denied in part. Under Rule 54, the Siddles are jointly and severally liable to the Pharos Defendants for $132,241.14. Under § 1927, Bruce Carr is jointly and severally liable to the Pharos Defendants with the Siddles for $25,000 of this amount. Under Rule 54, the Siddles are jointly and severally liable to Crants III for $1,125,247.26. Under § 1927, Bruce Carr is jointly and

69

severally liable with the Siddles to Crants III for $115,000.00 of this amount. Under § 1927, Rex Carr is jointly and severally liable for $15,000 of this amount. No sanctions are warranted against Parker under § 1927 relative to Crants III or the Pharos Defendants.

- The Siddles' Motion for Hearing (*Siddle I* Docket No. 454; and *Siddle II* Docket No. 333) will be denied.

Furthermore, the Third-Party Complaint filed by the Siddles in each case (*Siddle I* Docket No. 415; *Siddle II* Docket No. 297) will be dismissed without prejudice, the Counterclaim filed by Crants III (*Siddle I* Docket No. 299) will dismissed as moot, and the Siddles' Motion to Dismiss Counterclaim (*Siddle I* Docket No. 354) will be denied as moot.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

70